**Eric D. BURNS, Respondent,**

v.

**Lynn M. SMITH, Defendant,**

**and**

**Farmers Alliance Mutual Insurance Company of Kansas, Appellant.**

**No. SC 90041.**

Supreme Court of Missouri,
En Banc.

Jan. 26, 2010.

See also 214 S.W.3d 335.

Thomas C. Walsh, Bryan Cave LLP, St. Louis. MO, Deborah K. Dodge, Hall, Ansley, Rodgers & Sweeney, P.C., Springfield, MO, for Appellant.

Anthony L. DeWitt, Edward D. Robertson, Bartimus, Frickleton, Robertson & Gorny, P.C., Jefferson City, MO, Michael D. Holzknecht, Paul L. Redfearn, Redfearn Law Firm, P.C., Kansas City, MO, for Respondent.

LAURA DENVIR STITH, Judge.

Eric Burns recovered a $2,044,278 judgment against Lynn Smith for damages he received when a weld that Mr. Smith had placed on a cement mixer failed, causing the truck to explode and seriously injure its driver, Mr. Burns. Mr. Burns then filed this equitable garnishment action against Mr. Smith's insurance policies with Farmers Alliance Mutual Insurance and Oak River Insurance Company, neither of which had provided a defense. Farmers appeals the judgment holding that its policy's "business pursuits" exclusion is inapplicable and that under its contract it is liable for prejudgment interest on the portion of the judgment equal to its policy limits and for post-judgment interest on the entire judgment.

This Court affirms the judgment in part, reverses it in part and remands. Farmers' business pursuits exclusion does not apply because the injury did not occur in the course of the insured's "business," which is defined narrowly in the portion of the policy relevant here to be "[a] trade, profession or occupation, excluding farming, *and* the use of any premises or portion of residence premises for any such purposes." This Court rejects Farmers' invitation to come to a different result either by holding that the word "and" as used in the exclusion unambiguously means "or" or by modifying long-settled black-letter law requiring ambiguities in a policy to be resolved in favor of the insured and, instead, by engaging in a fact-based analysis of each party's subjective intent and interpretation of the contract.

The Court also affirms that Farmers must pay prejudgment interest on the portion of the judgment that does not exceed its $1 million policy limit and pay post-judgment interest accruing on the entire judgment. Once Oak River paid $675,000 of the judgment, interest could accrue only on the remaining unpaid portion of the judgment. Accordingly, the judgment as to post-judgment interest is reversed, and in all other respects, the judgment is affirmed. The case is remanded for entry of a judgment reflecting a correct calculation of post-judgment interest.

## I. FACTS

The relevant facts essentially are undisputed. Kennon Ready–Mix Inc. employed Mr. Burns to drive a concrete-mixer truck. Mr. Smith served as Mr. Burns's supervisor. This Court held on prior appeal of the underlying tort judgment against Mr. Smith that he was acting outside the scope of his duties at Kennon and increased the risk to Mr. Burns when placing a weld on a cement truck's salvage water-pressure tank over an area that had become corroded and rusted through. The weld was made defectively, and the tank later exploded, seriously injuring Mr. Burns. *See Burns v. Smith*, 214 S.W.3d 335, 340 (Mo. banc 2007).

In addition to recovering worker's compensation benefits from Kennon, Mr. Burns filed a negligence suit against Mr. Smith. When Mr. Smith's insurers refused to defend, Mr. Smith and Mr. Burns entered into an agreement pursuant to § 537.065, RSMo 2000, under which they agreed that the case would be tried to the court and that Mr. Burns would limit his recovery, if any, to any applicable insurance proceeds. The trial court found Mr. Smith liable for negligence and awarded Mr. Burns $2,044,278 in damages. Mr. Burns then filed the instant equitable gar-

nishment action against Mr. Smith's policy with Oak River and against his Farmowners–Ranchowners policy with Farmers.

During the pendency of the garnishment action, this Court affirmed the judgment for Mr. Burns against Mr. Smith, holding that Mr. Smith's conduct was outside the scope of his duties for the company and, therefore, that his conduct did not come within the exclusivity provisions of the worker's compensation statutes. *Burns*, 214 S.W.3d at 335.

Following this Court's ruling, Oak River settled with Mr. Burns for $675,000. The garnishment action on the Farmers policy proceeded to hearing. The Farmers policy, which covered Mr. Smith's dwelling, household property and farm premises, provided $1 million in personal liability coverage for "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence." The trial court found that, under this provision, Farmers was liable for its $1 million policy limits and that other provisions of the policy made it responsible for prejudgment interest on the policy limits and post-judgment interest on the entire amount of the underlying judgment.

Farmers now appeals, alleging that an exclusion to coverage applied and that, even were the exclusion inapplicable because ambiguous, the trial court erred in calculating the amount of prejudgment and post-judgment interest.

## II. STANDARD OF REVIEW

▮▮▮▮ The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews *de novo*. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *Martin v. U.S. Fidelity & Guaranty Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999). Where, as here, the trial court granted summary judgment, this Court also applies a *de novo* standard of review. *Am. Std. Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89 (Mo. banc 2000). "An order of summary judgment may be affirmed under any theory that is supported by the record." *In re Estate of Blodgett*, 95 S.W.3d 79, 81 (Mo. banc 2003).

## III. DISCUSSION

### A. Ambiguous Policy Language Is Construed Against the Insurer

▮▮▮▮ The parties agree that the determinative issue on appeal is whether the Farmers policy is ambiguous. It is blackletter law that: "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck*, 212 S.W.3d at 132; *Martin*, 996 S.W.2d at 508; *see Giokaris v. Kincaid*, 331 S.W.2d 633, 639–640 (Mo.1960). Moreover, "[i]n construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Seeck*, 212 S.W.3d at 132; *Martin*, 996 S.W.2d 506, 508 (Mo. banc 1999). This rule, often referred to as the doctrine of "*contra proferentem*,"[1] is applied "more rigorously in insurance contracts than in other contracts" in Missouri. *Mansion Hills Condominium Assoc. v. Am. Family Mut. Ins. Co.*, 62 S.W.3d 633, 637 (Mo.App.

---

1. The doctrine of *contra proferentem* is a canon of construction. BLACK'S LAW DICTIONARY 327 (6th ed., 1991), states it is "[u]sed in connection with the construction of written documents to the effect that an ambiguous provision is construed most strongly against the person who selected the language."

2001). Missouri also *strictly* construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies. *Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316, 321 (Mo. banc 1968); *Crossman v. Yacubovich*, 290 S.W.3d 775, 779 (Mo.App.2009); *McRaven v. F–Stop Photo Labs, Inc.*, 660 S.W.2d 459, 462 (Mo.App.1983).

*B. Farmers' "Business Pursuits" Exclusion Is Ambiguous*

■ This Court found Mr. Smith personally liable to Mr. Burns because his "conduct constituted an affirmatively negligent act by creating an additional danger beyond that normally faced in his job-specific environment." *Burns*, 214 S.W.3d at 340. The Farmers policy at issue provides personal liability coverage and would apply here unless the policy's "business pursuits" exclusion is also applicable. The latter states:

This policy does not apply:

Under Coverage G—Personal Liability and Coverage II—Medical Payment to Others:

. . . .

d. To bodily injury or property damages arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits or farming; . . .

While the term "business pursuits" is not defined in the policy, the word "business" specifically is defined to mean two types of business activities:

(1) **A trade, profession or occupation,** excluding farming, and the use of any premises or portion of residence premises for any such purposes; and

(2) **the rental or holding for rental** of the whole or any portion of the premises by an Insured.

(emphasis added). Farmers agrees that the injury to Mr. Burns did not arise out of the second type of business activity listed, that is, "(2) the rental or holding for rental of the whole or any portion of the premises of the Insured." But, Farmers claims, the injury did arise out of pursuit of *"(1) a trade, profession or occupation, excluding farming, and the use of any premises or portion of residence premises for any such purpose"* and, therefore, is excluded from coverage. This Court disagrees.

The policy expressly states the "Farm Premises designated herein are the only premises which the named Insured . . . owns, rents, or operates as a farm or maintains as a residence, other than business property." It is also undisputed that the injury occurred on property belonging to Kennon Ready–Mix rather than on a premises belonging to Mr. Smith. Therefore, if the exclusionary language in clause (1) is read to require both an injury arising out of a trade, occupation or business and the use of the insured's premises, the exclusion by its own terms does not apply. But, citing WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED, MERRIAM WEBSTER (1993), Farmers argues that the word "and" sometimes means "or" in context. It then argues that *if* the word "and" between the first and second portions of clause (1) is construed to mean "or" rather than "and," *then* clause (1) can be interpreted as if it set out two entirely separate exclusions. The first, Farmers argues, applies to injuries arising out of a trade, profession or occupation of the insured, and the second, it argues, is a separate exclusion that applies when the injury arises out of the use of any premises or portion of residence premises for such purposes. Therefore, even though the injury did not arise out of use of the premises, it still would come within the meaning of the first portion of clause (1)'s definition of "business" and, therefore, within the business pursuits exclusion.

There are at least two fundamental syntactic problems with Farmers' argument.

First, in drafting the policy, Farmers chose to number the types of pursuits that would come within the term "business" as used in the policy, and it gave them the numbers (1) and (2), not (1), (2) and (3). Yet to accept Farmers' argument that "and" really means "or" would require the Court, in effect, to add the number (3) to the definition and read it as if it set out three rather than two types of excluded businesses.[2] The argument is inconsistent with the very language of the definition itself. It is well-settled that this Court will not add language to a policy. *Jones v. Mid–Century Ins. Co.*, 287 S.W.3d 687, 691 (Mo. banc 2009). *Accord, Henderson v. Mass. Bonding & Ins. Co.*, 337 Mo. 1, 84 S.W.2d 922, 924–925 (Mo.1935); *Capitol Indem. Corp. v. Callis*, 963 S.W.2d 247, 249 (Mo.App.1997).

Second, the definition of business simply does not use the word "or." It uses the word "and." The first meaning of "and" in the cited dictionary, and others, is not "or" but "along with or together with" or words of comparable meaning. *See, e.g.*, Webster's Third New International Dictionary, Unabridged, Merriam Webster 80 (1993); Black's Law Dictionary 86 (6th ed. 1991); Webster's New World College Dictionary, Merriam Webster 51 (3d ed. 1996). Accordingly, the use of the conjunctive "and" requires both the first portion of clause (1)—a trade, occupation or business—**along with or together with** the second portion of clause (1)—the use of the insured's premises for that purpose. This dictionary-directed interpretation permits the word "and" to fulfill its common role as a logical connective needing all operands.

While Farmers may be correct that, in particular fact situations, courts have found that "and" *can* mean "as well as," "in addition to" and "also,"[3] and that such meanings are the equivalent of "or," such holdings do not support Farmers' contention that this Court should find that "and" *unambiguously* means "or" in this policy. At best, accepting Farmers' argument would mean only that the use of the word "and" can be ambiguous—for, while "and" *can* mean "or," most commonly "and" means simply "and."

It is well-settled that any such ambiguity must be construed against the insurer. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). This is in keeping with Missouri's policy not to "use 'technical, philosophical, or scientific meanings of the terms, nor a restricted meaning acquired in legal usage.' " *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999) (internal citations omitted). Rather, the Court uses an objective standard, applying the meaning " 'which would be attached by an ordinary person of average understanding if purchasing insurance.' " *Id.; see also Seeck*, 212 S.W.3d at 132.

■ Farmers argues this Court should abandon its settled objective approach and instead adopt a standard under which a court must look at extrinsic evidence such as affidavits[4] and try to determine the

---

**2.** If Farmers' argument were accepted, the policy in effect would be revised to exclude: *"(1)* A trade, profession or occupation, excluding farming, and *(2)* the use of any premises or portion of residence premises for any such purposes; and *(3)* the rental or holding for rental of the whole or any portion of the premises by an Insured."

**3.** *Id.* The definitions Farmers cites are definitions 1c, 1g and 1e of "and," respectively, in the 1993 edition of Webster's Third New International Dictionary 80.

**4.** The extrinsic evidence on which Farmers relies is an affidavit it extracted from Mr. Smith in the weeks after the judgment had been entered against him in the underlying suit. The affidavit states that he did not be-

parties' subjective intent before it may resolve ambiguities in favor of the insured. In support, it cites to Missouri cases construing non-insurance contracts and to cases from a small minority of jurisdictions that it says have chosen to use such a subjective standard. To adopt Farmers' argument would be inconsistent with the principle long followed by this Court:

> [A]n insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. Hence, if the terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the insurer.

*Farm Bureau Town and Country Ins. Co. of Mo. v. Schmidt,* 751 S.W.2d 375, 376 (Mo. banc 1988) *quoting, Varble v. Stanley,* 306 S.W.2d 662, 664–665 (Mo.App.1957); *Martin,* 996 S.W.2d at 508 (Mo. banc 1999); *see also Seeck,* 212 S.W.3d at 132. Missouri adopted this approach in reliance on the sound reasoning of Judge Learned Hand:

> [T]he canon *contra proferentem* is more rigorously applied in insurance than in other contracts, in recognition of the difference between the parties in their acquaintance with the subject matter . . . . insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion.

*Gaunt v. John Hancock Mut. Life Ins. Co.,* 160 F.2d 599, 602 (2d Cir.1947) (Hand, J.), *followed in Krombach,* 827 S.W.2d at 211 (Mo. banc 1992).

 Further, as the drafter, the insurer is in the better position to remove ambiguity from the contract. *Krombach,* 827 S.W.2d at 211. When "there is an ambiguity, insureds are entitled to a resolution of that ambiguity consistent with their *objective* and *reasonable* expectations as to what coverage would be provided." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.,* 992 S.W.2d 308, 317 (Mo.App.1999) (emphasis added).[5] A court, therefore, will not resort to "extrinsic evidence [offered] to demonstrate their positions of coverage and non[-]coverage. Since the language used is uncertain, the well[-]established rule applies that it will be construed against the insurer." *Boling v. State Farm Mut. Auto. Ins. Co.,* 466 S.W.2d 696, 699 (Mo.1971). Rather:

> If a contract promises something at one point and takes it away at another, there is an ambiguity. Such an ambiguity is patent, rather than latent, and may be resolved within the four corners rather than by means of extrinsic aids. Because the ambiguity is in an insurance contract it is to be resolved in favor of the insured and against the insurer.

*Lutsky v. Blue Cross Hosp. Serv., Inc., of Mo.,* 695 S.W.2d 870, 875 (Mo. banc 1985). As stated above, this means a court will

lieve he had coverage for the injury, which he thought—contrary to this Court's later holding on appeal—occurred in the scope and course of his work at Kennon Ready–Mix. To the extent that the affidavit contains factual statements as opposed to legal conclusions, they are inconsistent with Mr. Smith's conduct in claiming coverage and requesting Farmers to defend the suit. Even had the affidavit been relevant, the trial court was not required to accept the statements in it.

5. This Court thus looked to the dictionary definition of the word "and" to determine what the ordinary layperson would interpret as the meaning of that word. *See Martin,* 996 S.W.2d at 507 ("[t]o determine the ordinary meaning of a term, this Court consults standard English language dictionaries.").

objectively look to "[t]he ordinary meaning of a term ... the meaning that the average layperson would reasonably understand." *Seeck,* 212 S.W.3d at 132. *Accord, Martin,* 996 S.W.2d at 508.[6]

Finally, Farmers argues this Court's interpretation reaches "absurd" results as it means the policy covers bodily injury that occurs off Mr. Smith's premises but not bodily injury that occurs on his premises, even though the latter is where Mr. Smith did most of his work—that is, on his farm. But that is the policy Farmers chose to sell to Mr. Smith. Had Farmers intended to sell a policy containing an exclusion that applied to all trades, occupations or businesses without regard to where they were conducted, it could have used the policy language construed in *Dieckman v. Moran,* which stated it excluded business pursuits, and its definitions section stated " 'Business' includes trade, profession or occupation." 414 S.W.2d 320, 321 (Mo. banc 1967). This Court held that this language was not ambiguous and that all business pursuits (other than those covered by another provision) were excluded from coverage. *Id.* at 321–322.

Here, however, Farmers chose to qualify the *Dieckman* exclusion by adding the additional requirement " ... *and* the use of any premises or portion of residence premises for any such purposes." Farmers would have this Court ignore the added clause or treat it as a separate exclusion. If that was what Farmers intended, then it should have written the policy so. This Court must give to the added clause the meaning that a reasonable layperson would give it, and it does so here by interpreting the word "and" to mean that the conduct must be both a trade occupation or business *and* on the premises.

■■■ Moreover, although Farmers would be bound by the language it chose even if it later decided that its reasonable meaning was not to its liking, there is nothing "absurd" about so limiting the business-pursuits exclusion. There are logical reasons why an insured may wish to have a policy that covers the occasional business pursuit that is not conducted on the premises and that otherwise might not be covered by a business policy or workers' compensation. Clearly Farmers did not find it absurd to offer such coverage and accept Mr. Smith's premiums for it.[7] This Court applies the policy as written.

*C. Accrual of Prejudgment and Post-Judgment Interest*

■■■ The Farmers policy expressly requires Farmers to pay prejudgment interest "on that part of" any judgment against it that the company pays, stating:

The Company will pay, in addition to the applicable limit of liability, prejudgment interest awarded against the **insured** on that part of the judgment the Company pays. If the Company makes an offer to pay the applicable limit of its

---

6. *Accord, Zemelman v. Equity Mut. Ins. Co.,* 935 S.W.2d 673, 675 (Mo.App.1996); *Linderer v. Royal Globe Ins. Co.,* 597 S.W.2d 656, 661 (Mo.App.1980). Missouri's rule of construing ambiguities against the insurer is by no means an anomaly. *See David* J. Schenck, *Remedies for Environmental Liability: Rights of the Toxic Grantee,* 43 Baylor L.Rev. 761, 782 (1991) ("Every jurisdiction which has faced the issue, with the exception of Maryland pay [sic] deference to the insured's interpretation."); David L. Leitner, Reagan W. Simpson, & John M. Bjorkman, 1 Law and Prac. of Ins. Coverage Litig. § 1:3 (2009).

7. Where an interpretation is supported by reference to common grammar texts, it is a reasonable interpretation. *Schenewerk v. Mid–Century Ins. Co.,* 263 S.W.3d 660, 664 (Mo.App.2008) (where "scholarly sources" pointed to differing uses of the world "only," an insurance policy needed to be resolved in favor of the insured, as it was "subject to more than one reasonable interpretation ...").

liability, the Company will not pay any prejudgment interest based on that period of time after the offer.

(emphasis in original).

Here, Farmers' portion of the judgment was its policy limits of $1 million. Farmers did not take advantage of the opportunity offered by the second sentence just quoted to limit its potential liability for prejudgment interest by making "an offer to pay the applicable limit of its liability" prior to judgment. Accordingly, Farmers is liable to pay prejudgment interest on the full $1 million of its limit of liability.

■ Mr. Burns argues that the second sentence quoted above should be read to mean that if the company does not offer to pay its policy limits prior to trial, then it should be held liable for prejudgment interest on the whole judgment. This entirely misreads the provision. The second sentence contains a *limitation* on the liability the company otherwise would have to pay on prejudgment interest, not an expansion of that liability. Neither it nor any other provision of the policy makes the company liable for prejudgment interest on more than its limit of liability. As Mr. Burns bases his argument solely on the policy language (there being no other statutory or common law right to prejudgment interest available here), this argument is without merit. *See Levin v. State Farm Mut. Auto. Ins. Co.,* 510 S.W.2d 455, 459 (Mo. banc 1974) (interest due only up to liability limit on policy).[8] Farmers, therefore, is liable for prejudgment interest only on the $1 million limit of liability, which the parties do not dispute is $329,431.

■ The language of the Farmers' policy does not limit, however, its liability for post-judgment interest to the amount of the judgment it is obligated to pay. To the contrary, the policy provides Farmers will pay as post-judgment interest:

[A]ll interest on the entire amount of the judgment which accrues after entry of judgment and before this Company has paid or tendered or deposited in Court that part of the judgment which does not exceed the limit of this Company's liability thereon.

(emphasis added). Farmers' own policy provides that it will pay *the amount* of post-judgment interest that *accrues* on the entire judgment up to the time it pays, deposits or tenders its policy limits. The provision clearly provides an incentive to the insurer to pay its policy limits expeditiously, even if other parties do not or if other aspects of the judgment are still in contention. Here, Farmers has not paid, tendered or deposited that part of the judgment that does not exceed its liability

---

**8.** The Court does note *Auto–Owners Ins. Co. v. Ennulat* held an insurer who similarly failed to defend "waived its right to argue that it is not liable for prejudgment and post-judgment interest." 231 S.W.3d 297, 306 (Mo.App. 2007). It would be incorrect to read this statement to mean that an insurer cannot complain about the miscalculation of interest. *Ennulat* relies on *Versaw v. Versaw,* 202 S.W.3d 638 (Mo.App.2006). The policies in both *Versaw* and *Ennulat* stated that the insurer would pay prejudgment and post-judgment interest in cases the insurer defended; it was intended to prevent an insured from refusing an offered defense and then delaying the payment and demanding interest. *Versaw* held that where the lack of defense was due to a wrongful refusal to defend by the insurer, the provision that said that interest was due only where the company provided a defense would not be given effect, as otherwise the company would benefit from its wrongful refusal to defend. *Ennulat's* statement that a wrongful refusal to defend waives the insurer's right to argue it is not liable for interest was simply a short-hand way of stating the court's agreement with *Versaw* that, by wrongly refusing to defend, the insurer waived its right to argue that it had no duty to pay interest in cases that it did not defend.

limits of $1 million; therefore, it is liable for all interest that has accrued on the entire amount of the judgment, $2,044,278.

 Interest accrued on the full $2,044,278 until co-defendant Oak River paid $675,000, after which interest continued to accrue on the remainder of the judgment. The trial court, however, directed that Farmers pay post-judgment interest on the entire judgment even after Oak River's payment. Interest accrues on unpaid monies. Once monies are paid, there is no debt on which interest can accrue. Here the trial court should have calculated interest on the entire judgment only up to the time of the Oak River payment and should calculate interest on the remainder of the judgment until the time Farmers pays the amount of the judgment that does not exceed its $1 million limit of liability. *See, e.g., Levin,* 510 S.W.2d at 461; *Miller v. Secura Ins. and Mut. Co. of Wis.,* 53 S.W.3d 152, 157 (Mo. App.2001) (such a provision limits the duration of the liability for interest); *Ennulat,* 231 S.W.3d at 307 (the insured is liable for post-judgment interest "only until such time as it pays the policy limits").

## IV. CONCLUSION

This Court reverses the judgment against Farmers only insofar as it awards post-judgment interest on the entire judgment after the time that Oak River paid $675,000, as interest stopped accruing on that portion of the judgment once it was paid. The judgment is affirmed in all other respects. The case is remanded so the trial court can enter a judgment reflecting a correct calculation of post-judgment interest.[9]

9. Burns and Farmers give differing numbers as to the principal amount on which post-judgment interest should accrue.

PRICE, C.J., TEITELMAN, RUSSELL, WOLFF and FISCHER, JJ., and PFEIFFER, Sp.J., concur.

BRECKENRIDGE, J., not participating.