

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| OWNERS INSURANCE COMPANY, | ) | No. ED103652 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1422-CC10222 |
| | ) | |
| GARY PARKISON AND JUDITH | ) | Honorable David L. Dowd |
| PARKISON, Individually, and JOHN VEST as | ) | |
| Class Representative for the Estate of | ) | |
| Betty Vest, | ) | |
| | ) | |
| Respondents. | ) | Filed: January 31, 2017 |

Owners Insurance Company ("Appellant") appeals the trial court's grant of summary judgment in favor of Gary Parkison and Judith Parkison, individually, and John Vest, as class representative for the estate of Betty Vest ("Respondents") on Appellant's declaratory judgment action brought to determine coverage under a garage liability insurance policy issued by Appellant. We affirm.

## I.      BACKGROUND

### A.      The Events Giving Rise to Appellant's Claim

While the parties dispute the interpretation of the relevant insurance policy, they do not dispute the underlying facts, which are as follows. In June 2013, Bill Grant Ford Inc., a car dealership, provided a 1998 Ford Taurus, which it owned, to John Sconce for use as a temporary substitute vehicle while his vehicle was undergoing repairs.

On June 29, 2013, Sconce's son, Jesse,[1] was driving the Taurus northbound on Missouri Route 123 when he allowed the vehicle to travel across the centerline and collide into a vehicle traveling southbound on the same route. Gary Parkison was driving the other vehicle involved, a Ford Fusion; Judith Parkison and Betty Vest were passengers in the car. The Parkisons and Vest were injured in the accident, and Vest died as a result of her injuries. The Missouri Highway Patrol's investigation determined Jesse was at fault in the collision. Two passengers in the Taurus were also injured.

## B.       Insurance Policies Relevant to this Appeal

At the time of the collision, Jesse was insured under an automobile liability policy issued by Progressive Insurance Company ("the Progressive policy"), which provided bodily injury coverage to Jesse with limits of $25,000 per person and $50,000 per occurrence.

Additionally, the Taurus was insured under a garage liability insurance policy issued to Bill Grant Ford from Appellant ("the Owners policy"). The parties agree Jesse met the definition of a "garage customer," and thus qualified as an "insured person" under the Owners policy. The Owners policy contained a declaration page which set the limit of the bodily injury liability coverage under the Garage Liability portion of the policy at $1,000,000 per occurrence.[2]

The terms of the Garage Liability part are set out in a thirty-one page form, divided into the following "Sections":

| | | |
|---|---|---|
| Section I | - | Definitions |
| Section II | - | Coverage (defining the scope of coverages, and setting out the "Exclusions" applicable to each coverage) |
| Section III | - | Who is an Insured |
| Section IV | - | Limits of Insurance |
| Section V | - | Deductible |

---

[1] Because Jesse shares the same last name as his father, we will refer to Jesse by his first name for clarity and ease of reference. No disrespect is intended.

[2] The Owners policy contains two "parts" – the "Garage Liability" part and the "Dealer's Blanket" part. Because the Dealer's Blanket part is not relevant to this appeal, it will not be discussed and all further discussion of the policy concerns the Garage Liability part.

Section VI    -    What You Must Do After an Accident, Occurrence or Loss
Section VII   -    General Conditions (including sixteen subsections, one of
                   which is "Other Insurance")

The Garage Liability policy form is supplemented by fifteen pages containing ten

endorsements, the last of which is the subject of this appeal.  Form 89880, titled "Missouri

Amendatory Endorsement – Garage Liability," contains an amendment to the "Other Insurance"

section, and includes the clause that Appellant contends precludes coverage in this case and

which is italicized below, along with other relevant language.

**MISSOURI AMENDATORY ENDORSEMENT – GARAGE LIABILITY**

It is agreed:
1.  Under SECTION VII – GENERAL CONDITIONS, E. OTHER
    INSURANCE, condition 4. is deleted and replaced with the following:
        4.  *This provision governs the relationship of this policy with insurance
        policies issued by insurance companies other than us.  It does not define
        our limit of liability to pay any coverage provided by this policy and shall
        not be constructed to increase any limit of liability described under
        SECTION IV – LIMITS OF INSURANCE.*[3]
        This insurance shall be, with respect to any auto to which this insurance
        applies:
            a. Primary insurance for any auto owned by you except when such auto
            is in the care, custody or control of a garage customer.  *When any auto
            owned by you is in the care, custody or control of a garage customer:*
                *(1)  No damages are collectible under this policy if there is other
                collectible insurance, whether primary, excess or contingent,
                available to the garage customer and the limits of such insurance are
                sufficient to pay damages up to the amount of the applicable financial
                responsibility limit.*[4]
                (2)  If there is no other collectible insurance available to the garage
                customer, damages are collectible under this policy only up to the
                amount required by the applicable financial responsibility limit.
            b.  Excess insurance over any other collectible insurance for any auto
            you do not own.

(emphasis added and omitted).

---

[3] For ease of reference, this section of italicized language will be referred to as "introductory sentences" throughout
this opinion.
[4] Initially, the parties disputed the proper label of this clause.  However, both parties now agree that it is not the label
that is dispositive, but the interpretation of the clause.  For purposes of this appeal only, we will simply refer to it as
the "Other Insurance Clause."

The above provision in the Missouri Amendatory Endorsement is followed by an amendment to Section IV – Limits of Insurance, which states:

> 4. Under SECTION IV – LIMITS OF INSURANCE, COVERAGE A (Auto), 5. is deleted and replaced by the following:
>> 5. The limit of insurance shown in the Declarations for this coverage is the most we shall pay for all claims of one or more persons in any one occurrence regardless of:
>>> a. The number of insureds;
>>> b. The number of persons injured;
>>> c. The number of autos…;
>>>
>>> …
>>> g. Whether this policy applies as primary or excess insurance.

(emphasis omitted).

## C.     Claims Asserted and Relevant Procedural Posture

Following the collision between the Taurus driven by Jesse and the Fusion driven by Gary Parkison, Respondents claimed coverage for their damages under both the Progressive policy and the Owners policy. The two passengers in the Taurus also asserted claims. Acting through counsel, Progressive and Appellant tendered an offer to all claimants collectively (including Respondents) to settle all claims for a total of $100,000 with the division of those proceeds to be agreed upon by all claimants. The total amount of the offer consisted of the $50,000 per-occurrence limits of the Progressive policy, plus the $50,000 per-occurrence limits acknowledged by Appellant to be provided by its policy as required by Missouri's Motor Vehicle Financial Responsibility Law ("MVFRL").

Subsequently, the passengers in the Taurus settled their claims for negotiated shares of the $100,000 offer, releasing Jesse, Bill Grant Ford, Progressive, and Appellant. Respondents also entered into a "Settlement Agreement and Release" with Appellant, under which, (1) Respondents each received their negotiated shares of the $100,000 offer; and (2) Respondents released Jesse, Bill Grant Ford, and Progressive, but by express agreement, Respondents and

4

Appellant retained the right to pursue, via declaratory judgment, a portion of coverage under the Owners policy which was disputed by the parties.

Pursuant to the settlement agreement, Appellant then filed a petition for declaratory judgment against Respondents. Citing the Other Insurance Clause in the Owners policy, Appellant requested a judicial declaration that it owed no further coverage under the Owners policy because, (1) Jesse was a garage customer with other valid and collectible insurance sufficient to meet the MVFRL requirements; and (2) Appellant had already paid its obligation to Respondents under the MVFRL. Respondents then filed an answer and counterclaim arguing that, *inter alia*, Jesse was entitled to $1,000,000 in coverage under the Owners policy because the Other Insurance Clause only applies to disputes between Appellant and other insurers, which is not the case here.

Thereafter, both parties moved for summary judgment, each citing the Owners policy in support of their respective positions. On October 21, 2015, the trial court granted Respondent's motion for summary judgment, and denied Appellant's motion. In its judgment, the trial court found that the Other Insurance Clause expressly and unambiguously limited its application to disputes between insurance companies, and did not apply to disputes involving garage customers. Therefore, the court explained, although Jesse was insured under the Progressive policy at the time of the collision, the Other Insurance Clause in the Owners policy did not preclude coverage in this case. In reaching its decision, the trial court found the Other Insurance Clause was limited by the two introductory sentences, and found it significant that the provision was not placed in the limits of liability section, the definition of who was an insured, or the exclusions section. This appeal followed.

## II.    DISCUSSION

In its sole point on appeal, Appellant asserts the trial court erred in granting summary judgment in favor of Respondents because the Owners policy issued to Bill Grant Ford unambiguously excluded garage customers from coverage.  We disagree.

**A.    Standard of Review and General Law Relating to the Interpretation of an Insurance Policy**

A trial court's decision to grant summary judgment is an issue of law this Court reviews de novo, and we will affirm such decision if it is proper under any legal theory supported by the record.  *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010); *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007).  Summary judgment is proper only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Nationwide Insurance Company of America v. Thomas*, 487 S.W.3d 9, 12 (Mo. App. E.D. 2016). When the underlying facts are undisputed, controversies regarding the interpretation and application of insurance contracts are matters of law.  *Id.*  Whether an insurance policy is ambiguous is also a question of law this Court reviews de novo.  *Id.*; *Seeck*, 212 S.W.3d at 132.

The central issue to this appeal is whether the Owners policy is ambiguous.  If an insurance policy is unambiguous, it must be enforced according to its terms.  *Thomas*, 487 S.W.3d at 12.  However, if the policy language is ambiguous, the ambiguity must be construed against the insurer as the drafter of the contract.  *Id.*  In construing terms of an insurance policy, we apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance…." *Id.* (quoting *Seeck*, 212 S.W.3d at 132).  An insurance policy is ambiguous if its language is reasonably open to different interpretations.  *Seeck*, 212 S.W.3d at 132.  Further, an ambiguity exists if there is duplicity, indistinctiveness, or uncertainty in the meaning of the policy's language.  *Id.*; *Burns*, 303 S.W.3d at 509.  When interpreting specific

policy provisions, we are required to evaluate the policy as a whole, rather than viewing each provision in isolation. *Seeck*, 212 S.W.3d at 133.

**B.**      **Analysis of Appellant's Claim**

We initially note that although certain case law will be instructive to our analysis of the Owners policy at issue in this case, none are dispositive in the absence of identical policy language. *See Long v. Shelter Ins. Companies*, 351 S.W.3d 692, 702 (Mo. App. W.D. 2011). The parties have not cited, and our research has not revealed, a case dealing with an other insurance clause preceded by introductory language similar to that present in the policy at issue in this case. Thus, we must begin our analysis with the language of the Owners policy.

**MISSOURI AMENDATORY ENDORSEMENT – GARAGE LIABILITY**

It is agreed:
1. Under SECTION VII – GENERAL CONDITIONS, E. OTHER INSURANCE, condition 4. is deleted and replaced with the following:

> 4.  *This provision governs the relationship of this policy with insurance policies issued by insurance companies other than us. It does not define our limit of liability to pay any coverage provided by this policy and shall not be constructed to increase any limit of liability described under SECTION IV – LIMITS OF INSURANCE.*
>
> This insurance shall be, with respect to any auto to which this insurance applies:
>> a.  Primary insurance for any auto owned by you except when such auto is in the care, custody or control of a garage customer. *When any auto owned by you is in the care, custody or control of a garage customer:*
>>> *(1)  No damages are collectible under this policy if there is other collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit.*
>>> (2)  If there is no other collectible insurance available to the garage customer, damages are collectible under this policy only up to the amount required by the applicable financial responsibility limit.
>> b.  Excess insurance over any other collectible insurance for any auto you do not own.
>
> …

4. Under SECTION IV – LIMITS OF INSURANCE, COVERAGE A (Auto), 5. is deleted and replaced by the following:

7

5. The limit of insurance shown in the Declarations for this coverage is the most we shall pay for all claims of one or more persons in any one occurrence regardless of:
   a. The number of insureds;
   b. The number of persons injured;
   c. The number of autos…;

   …

   g. Whether this policy applies as primary or excess insurance.

(emphasis added and omitted).

Here, Appellant argues the Other Insurance Clause unambiguously "eliminates liability coverage for a garage customer when the garage customer has other valid and collectible automobile liability insurance." Appellant reads the Other Insurance Clause as a "no liability" or "escape" clause, which excludes from coverage a garage customer when the garage customer has other insurance available to him. Appellant asserts the first introductory sentence does not limit the clause's application to disputes between insurance companies. Rather, according to Appellant, the first sentence explains that the existence of an insurance policy issued by an insurance company other than Appellant is an "essential predicate" before the Other Insurance Clause is triggered. Further, Appellant contends the second introductory sentence merely reinforces that the Other Insurance Clause is an exclusion rather than a limit on liability.

In contrast, Respondents assert that the two introductory sentences limit the application of the Other Insurance Clause to "define the rights of the insurer when multiple insurers cover the loss and they are debating their relative rights and obligations," and thus does not apply to this case. Additionally, Respondents suggest the second introductory sentence should be read consistently with the second provision of the Missouri Amendatory Endorsement which restates the only limits of liability are those which are presented in Section IV and do not change regardless of whether the Owners policy applies as primary or excess coverage. Respondents alternatively argue the Owners policy is, at least, ambiguous because of the context of the Other Insurance Clause and the two introductory sentences, and the ambiguity must be construed

8

against the insurer.  For the reasons stated below, we agree the Owners policy is ambiguous and affirm on those grounds.[5]

An ordinary person of average understanding may have understood the Other Insurance Clause as applying solely to disputes between insurance companies.  *See Thomas*, 487 S.W.3d at 12.  This interpretation is supported by the rule of construction that provisions in an insurance policy shall not be read in isolation, but must be read in context, as it gives effect to the two introductory sentences preceding the Other Insurance Clause.  *See Seeck*, 212 S.W.3d at 133.

In *Seeck*, the Missouri Supreme Court held that the existence of an other insurance clause does not always render a policy ambiguous, but rather, such a clause can be enforceable if not contradicted or rendered ambiguous by other clauses in the contract.  *Id*. at 134 n.3.  In this case, however, the alleged exclusionary language in the Other Insurance Clause found in the Missouri Amendatory Endorsement is contradicted and rendered ambiguous not only by other clauses of the Owners policy which do not reference or direct a reader to the Other Insurance Clause, but also by language in the Missouri Amendatory Endorsement section itself – the two introductory sentences.  Again, the two introductory sentences provide: "This provision governs the relationship of this policy with insurance policies issued by insurance companies other than us. It does not define our limit of liability to pay any coverage provided by this policy and shall not be construed to increase any limit of liability described under SECTION IV – LIMITS OF INSURANCE."  These two introductory sentences contradict the general applicability of this provision for which Appellant advocates.

---

[5] The trial court granted summary judgment on the grounds that the Other Insurance Clause expressly and unambiguously limited its application to disputes between insurance companies, and thus did not apply to this case. Consequently, the court did not reach the grounds upon which we affirm.  However, as previously stated, we will affirm the trial court's decision to grant summary judgment if it is proper under any legal theory supported by the record.  *Burns*, 303 S.W.3d at 509.

Moreover, in *Windsor Ins. Co. v. Lucas*, this Court upheld a step-down provision where the limit was alluded to in both the definitions section and the limits of liability section of the policy. 24 S.W.3d 151, 153-55 (Mo. App. E.D. 2000). The *Windsor* Court recognized:

> [T]here is no prohibition under Missouri law for an insurance contract to set forth the maximum amount the insurer will pay in one part, then stipulate the circumstances under which the insurer may lower the maximum amount it will pay, so long as all considered sections contain plain and unambiguous terms, and reading them together does not create an ambiguity.

*Id*. at 154.

Regarding the Owners policy, it is reading the Other Insurance Clause within the whole Missouri Amendatory Endorsement section that *does* create the ambiguity. *See id*.; *see also Seeck*, 212 S.W.3d at 133-34, 134 n.3. The limiting introductory sentences along with the absence of any reference to the Other Insurance Clause in other sections of the Owners policy, especially those sections which the average insured is more likely to examine for an exclusion or limit of liability, exacerbates the ambiguity created by interpreting the Other Insurance Clause as an exclusion or limit of liability applicable to disputes involving garage customers. *See Seeck*, 212 S.W.3d at 134 n.3 (an other insurance clause can be enforceable if not contradicted or rendered ambiguous by other clauses in the contract); *see also Simmons v. Farmers Insurance Company, Inc.*, 479 S.W.3d 671, 676 (Mo. App. E.D. 2015). All of these considerations, together, weigh in favor of the limited application advanced by Respondents.

On the other hand, an ordinary person of average understanding could also interpret the Other Insurance Clause as a "no liability" or "escape" clause, precluding coverage for garage customers under certain circumstances. *See Thomas*, 487 S.W.3d at 12. Such a reading was approved by Missouri Courts in *Todd v. Missouri United School Ins. Council*, 223 S.W.3d 156 (Mo. banc 2007), and *Naeger v. Farmers Ins. Co., Inc.*, 436 S.W.3d 654 (Mo. App. E.D. 2014). Those cases support the proposition that the existence of exclusions does not automatically

10

render a policy ambiguous or cause conflict with a policy's limits of liability, because exclusionary provisions exclude particular risks from coverage altogether, whereas, the limit of liability provisions limit the extent of the insurer's liability when a certain risk is actually covered. *Todd*, 223 S.W.3d at 162-63; *Naeger*, 436 S.W.3d at 661.

Although we find this could be a reasonable interpretation, the two introductory sentences of the Other Insurance Clause in the Owners policy – language which was not present in the insurance policies at issue in *Todd* and *Naeger* – prevent a straightforward application of those cases. The interpretation advanced by Appellant would resolve the ambiguity created when reading the alleged exclusionary language in the Other Insurance Clause in conjunction with the second introductory sentence, which provides: "[This provision] does not define our limit of liability to pay any coverage provided by this policy and shall not be construed to increase any limit of liability described under SECTION IV – LIMITS OF INSURANCE." However, this construction fails to address the inconsistency of the language of the first introductory sentence, which states: "This provision governs the relationship of this policy with insurance policies issued by insurance companies other than us."

In support of its position that the Other Insurance Clause is an enforceable "no liability" clause, Appellant also cites *State Farm Mut. Auto. Ins. Co. v. Western Cas. & Sur. Co.*, 477 S.W.2d 421 (Mo. banc 1972). In that case, the Missouri Supreme Court enforced an other insurance exclusion where the insured paid a reduced premium rate in exchange for the insurer taking on a lower risk by excluding garage customers with other insurance. *Id*. at 426-27. Though the provision used some similar language as the Owners policy, it did not include the two introductory sentences creating the ambiguity in this case. *Id*. at 426. Additionally, Appellant has failed to point to evidence of an agreement for Bill Grant Ford to pay a reduced premium in exchange for Appellant taking on reduced risk, which was central to the *State Farm*

11

Court's holding enforcing that provision, but merely speculates that the premium calculation necessarily took into account limits on coverage. *See id*. at 427.

By definition, the existence of the two reasonable interpretations of the Owners policy set out above renders it ambiguous. *See Seeck*, 212 S.W.3d at 132. Appellant argues, and Missouri case law reaffirms, that we may not read the Other Insurance Clause in isolation, but must review the "whole policy to determine whether there is contradictory language that would cause confusion and ambiguity in the mind of the average policy holder." *Miller v. Ho Kun Yun*, 400 S.W.3d 779, 786 (Mo. App. W.D. 2013) (quotations omitted); *see also Seeck*, 212 S.W.3d at 133. However, this Court concludes that it *is* reading the Other Insurance Clause in context of its surrounding language that results in duplicity and uncertainty in the terms of the Owners policy and the coverage thereunder, thus creating the ambiguity here. *See Burns*, 303 S.W.3d at 509; *Seeck*, 212 S.W.3d at 132-33.

It is well-settled that Missouri courts apply the doctrine of *contra proferentum*[6] more rigorously when reviewing insurance contracts. *Burns*, 303 S.W.3d at 509-10. As the *Burns* Court reiterated:

> An insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. Hence, if the terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the insurer.

*Id*. at 512 (quotations omitted). Moreover, Appellant, as the drafter of the insurance contract, was in the better position to remove ambiguity in its meaning. *See id*.; *see also Seeck*, 212 S.W.3d at 134 n.3 (it is the insurer's responsibility to include clear and unambiguous language in its policy).

---

[6] This doctrine provides that an ambiguous contract provision "is construed most strongly against the person who selected the language." *Burns*, 303 S.W.3d at 509 n.1 (quotations omitted).

12

For these reasons, we must construe the ambiguity in the Owners policy against Appellant, and limit the Other Insurance Clause's application to disputes between insurance companies. In order to give effect to the meaning an average layperson would reasonably understand of the existing Other Insurance Clause, this Court limits its applicability and determines that it does not apply to the case at bar. *See Burns*, 303 S.W.3d at 512-13. This Court refuses to ignore the limiting introductory sentences of the Other Insurance Clause, and seeks to give effect to those sentences as well as the Missouri Amendatory Endorsement section as a whole which deals with governing the rights and obligations between Appellant and other insurers. *See Southeast Bakery Feeds, Inc. v. Ranger Ins. Co.*, 974 S.W.2d 635, 638 (Mo. App. E.D. 1998) (an interpretation of an insurance policy which entirely nullifies one provision should not be adopted if the policy is susceptible to an interpretation which gives effect to all its provisions).

Based on the foregoing, the trial court did not err in granting summary judgment in favor of Respondents. Point denied.

### III. CONCLUSION

The trial court's grant of summary judgment in favor of Respondents is affirmed.

_____

ROBERT M. CLAYTON III, Presiding Judge

Mary K. Hoff, J., and
Lisa P. Page, J., concur.

13