

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| YOLANDA BELL, | ) | |
| | ) | |
| Appellant, | ) | WD85804 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| SHELTER GENERAL INSURANCE | ) | December 12, 2023 |
| COMPANY, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable John Torrence, Judge**

**Before Division One: Edward R. Ardini, Jr., Presiding Judge,**
**Anthony Rex Gabbert, Judge, and Janet Sutton, Judge**

Yolanda Bell (Bell) appeals following the Jackson County Circuit Court's judgment dismissing without prejudice her class action petition on behalf of herself and all others similarly situated alleging Shelter General Insurance Company (Shelter) breached its contractual duties under the insurance policy. Bell alleged a breach of contract in that Shelter failed to include sales tax and all fees as part of its loss claims payments upon the loss of an insured vehicle. Bell appeals, arguing the circuit court erred in dismissing her amended petition alleging that Shelter breached its contractual duties under the insurance policy because her claim was well-pleaded and reasonably interpreted Shelter's vehicle insurance policy as requiring payment of sales tax

and fees where the insurer elects to pay the "comparable value" of the vehicle. We reverse and remand.

**Factual and Procedural Background**

As stated in her amended petition, Bell insured a 2007 Land Rover Range Rover SC with Shelter when, in February 2018, the vehicle sustained damage. Bell then filed a claim for coverage of the property damage with Shelter, and Shelter determined the vehicle was a total loss. Shelter valued the vehicle at $11,467.00 and added $559.00 as a condition adjustment, bringing the total adjusted vehicle value to $12,026.00.

Shelter then paid Bell the market value for the vehicle, $12,026.00, added $11.00 in fees, and subtracted the policy's deductible of $250.00. Thus, Bell received a total payment of $11,787.00. This payment, however, did not include sales tax and, as Bell alleges, the payment also underpaid her fees, arguing the fees necessary to acquire ownership of another vehicle ranged from $38.75 to $71.75.

In February 2022, Bell filed a class-action petition and later filed an amended petition in June 2022. In the amended petition, Bell alleged Shelter breached its contractual duties in failing to pay her and all similarly situated insureds the sales tax and all fees owed as stated in Shelter's insurance policy. Bell did not claim that she acquired a replacement vehicle nor that she actually incurred costs from sales taxes and fees. Rather, Bell alleged that Shelter determined the cost to repair the vehicle was too expensive and elected to pay Bell the "comparable value" of her vehicle under the policy. Bell relied on sections 6(c) and 6(d) of the insurance policy:

> (6) **Comparable value** means the depreciated worth of a covered **auto** or part immediately before the **accident**; plus the **reasonable charges** required to pay for any of the following that apply to the **claim**:
> . . .
> (c) Sales tax or luxury vehicle tax **you** must incur to acquire **ownership** of another **auto** or part to replace a covered **auto** or part with one of equal value; and

2

(d) Other taxes or fees **you** must incur to acquire **ownership** of another **auto** or part to replace a covered **auto** or part with one of equal value.

Bell alleged that the "comparable value" under the Shelter policy included sales tax and any other taxes and fees that she would incur at a future date to acquire a new vehicle of equal value. Bell alleged that she and all class members are entitled to damages in the amount of sales tax and fees, less any amount in sales tax or fees already paid by Shelter, along with prejudgment interest, post-judgment interest, costs, and attorneys' fees.

In June 2022, Shelter filed a motion to dismiss Bell's amended petition and submitted suggestions in support. Shelter argued Bell, who had the burden of pleading facts which would establish coverage, failed to allege any of the necessary circumstances for Shelter to have paid her sales tax or fees under the insurance policy. Shelter argued that Bell failed to state a claim for breach of contract because Bell did not plead that she acquired a replacement vehicle of equal value and therefore did not incur reasonable charges for sales tax and fees.

Relying on the same sections 6(c) and 6(d) of the insurance policy, Shelter argued that, under the policy's plain language, Bell needed to actually incur charges for sales tax and fees before Shelter's insurance coverage would be triggered for these costs. Because Bell never acquired a replacement auto, Bell never incurred the "reasonable charges" for sales tax or fees as required by sections 6(c) and 6(d),[1] triggering Shelter's obligation to pay, therefore there was no breach of contract alleged.

---

[1] The Shelter vehicle insurance policy stated:

(44) **Reasonable charges** means the lesser of:

(a) The amount for which **we** can discharge the **insured's** entire obligation to the **person** providing the goods and services; or

In July 2022, Bell filed her suggestions in opposition to Shelter's motion to dismiss. Again, Bell argued that Shelter's vehicle insurance policy's plain language did not require her to have first purchased a replacement vehicle for Shelter to owe her sales taxes and fees. Bell further articulated that because section 6(a) and 6(b) used past-tense verbiage while sections 6(c) and 6(d) used future tense, then 6(c) and 6(d) must refer to the future sales taxes and fees that could be incurred by the insured.[2] Bell argued that Shelter's failure to pay her sales tax and fees for her damaged vehicle "constitute[d] a clear and straightforward breach of contract."

In October 2022, the circuit court granted Shelter's motion to dismiss Bell's amended petition and did so without prejudice.[3] The circuit court dismissed Bell's petition without a hearing and, in its order, the circuit court stated it had reviewed the relevant points and authorities as well as the specific policy language, but provided no further explanation for its decision beyond stating that Bell's petition did not state a claim for relief.

---

(b) The charges incurred for goods and services that, in **our** judgment, are within the range of charges for the same or similar goods and services, in the geographic area where the services are rendered or the goods are purchased.

[2] Sections 6(a) and 6(b) read as follows:

(a) Incurred cost for the necessary towing of a covered **auto** from the place where the **accident** occurred;

(b) Incurred cost for necessary storage of a covered **auto** from the day **you** make a **claim** under this policy until **we** offer to settle that **claim**.

[3] "Generally, a dismissal without prejudice is not a final, appealable judgment." *Pride v. Boone Cnty. Sheriff's Dep't*, 667 S.W.3d 210 (Mo. App. W.D. 2023). "However, when the court dismisses the petition without prejudice for failure to state a claim and the plaintiff elects to stand on her petition rather than pleading additional facts, the judgment of dismissal constitutes an appealable adjudication on the merits." *Id.* Because Bell decided to stand on her first amended petition rather than amending it, her appeal is properly before this Court.

Bell appeals. Additional facts necessary to the disposition of the case are included below as we address Bell's point on appeal.

## Legal Analysis

In her sole point on appeal, Bell argues that the circuit court erred in dismissing her amended petition alleging that Shelter breached its insurance policy contract by failing to include sales tax and fees as part of its payment compensating for the loss of her vehicle. Bell argues that her allegations were well-pleaded and that she reasonably interpreted the "comparable value" of a vehicle to include payment of sales tax and fees necessary to acquire a replacement vehicle. We agree the circuit court erred in dismissing Bell's petition, and reverse the circuit court's order granting Shelter's motion to dismiss.[4]

"We review *de novo* a circuit court's judgment sustaining a motion to dismiss on the pleadings." *Lee v. Missouri Dep't of Transp.*, 618 S.W.3d 258, 261 (Mo. App. W.D. 2021). *See Forester v. May*, 671 S.W.3d 383, 386 (Mo. banc 2023). "When considering whether a petition states a claim upon which relief can be granted, th[is] Court reviews the plaintiff's petition to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause of action that might be adopted in th[e] case." *Forester*, 671 S.W.3d at 386 (internal quotation and citation omitted). We "may not weigh the factual allegations to determine whether they are credible or persuasive." *Murray-Kaplan v. NEC Ins., Inc.*, 617 S.W.3d 485, 491 (Mo. App. E.D. 2021). Further:

> A motion to dismiss for failure to state a claim on which relief can be granted *is solely a test of the adequacy of the petition*. When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all

---

[4] In a motion to reconsider taken with the case and in its brief, Shelter asks that we reconsider our May 2023 order granting Bell's motion to set aside the appeal's dismissal that reinstated Bell's appeal. We decline Shelter's request and deny Shelter's motion.

5

> properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader.

*Lee*, 618 S.W.3d at 261 (quoting *Mitchell v. Phillips*, 596 S.W.3d 120, 122–23 (Mo. banc 2020)) (emphasis added). *See Forester*, 671 S.W.3d at 386. "In other words, the claimant merely must allege facts sufficient to state a cognizable cause of action." *Lee*, 618 S.W.3d at 261 (citation omitted).

We review the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted in that case." *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 326 (Mo. App. W.D. 2017) (quoting *Keveney v. Missouri Mil. Acad.*, 304 S.W.3d 98, 101 (Mo. banc 2010)). "The essential elements of a breach of contract action include: '(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.'" *Id*. (quoting *Keveney*, 304 S.W.3d at 104).

Shelter argues that Bell did not plead the elements necessary for a breach of contract action because Bell did "not allege: (1) that she actually paid or incurred any sales tax or fees; (2) that she acquired ownership of another auto to replace the Range Rover; or (3) that such a replacement auto was one of equal value to the Range Rover." Thus, Bell did not meet her burden "to plead facts establishing [that] each of these three circumstances exist, so as to trigger coverage for sales tax and fees, 'and thereby state a claim upon which relief may be granted.'"

In the amended petition, however, Bell, on behalf of herself and all others similarly situated, pled the elements necessary for a breach of contract action under her insurance policy interpretation. Bell pleaded: (1) the existence and terms of the Shelter vehicle insurance policy between herself, as well as all class members, and Shelter insurance; (2) Bell and all class

6

members "made a claim determined by Shelter to be a first-party loss under the insurance policy and determined by Shelter to be a covered claim"; (3) Shelter did not pay or underpaid sales taxes and fees in the loss claim payments; and (4) Bell and all class members were damaged and entitled to damages in the amount of the sales tax and fees, less any amount in sales tax or fees already paid, along with prejudgment interest, post-judgment interest, costs, and attorneys' fees allowable by law. Thus, giving the pleadings their broadest intendment and construing all allegations favorably to Bell, Bell sufficiently pled the elements for a breach of contract claim.

"The interpretation of an insurance policy is a question of law." *Murray-Kaplan*, 617 S.W.3d at 493. *Long v. Shelter Insurance Companies* articulates the standard for interpreting whether an insurance policy provides coverage:

> To determine whether an insurance policy provides coverage, we look to the insurance contract itself. If an insurance policy is unambiguous, we enforce the policy as written. The insurance policy must be given effect according to the plain terms of the agreement, consonant with the reasonable expectations, objectives and the intent of the parties. We look to definitions in insurance policies to guide our interpretation, . . . but when words or phrases are not defined in the policy, we look to the plain meaning of words and phrases as it would have been understood by an ordinary person of average understanding when buying the policy. In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured.

*Long v. Shelter Ins. Companies*, 351 S.W.3d 692, 701–02 (Mo. App. 2011) (internal quotation marks and citations omitted). *See also Burns v. Smith*, 303 S.W.3d 505, 509–13 (Mo. banc 2010) (explaining further proper insurance policy interpretation and resolution of policy ambiguities under Missouri law); *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132–34 (Mo. banc 2007) (interpreting the meaning of an underinsured motorist insurance policy and resolving ambiguities in favor of the insured).

7

Bell and Shelter propound two different interpretations of sections 6(c) and 6(d) in the insurance policy. Both assert their interpretation relies on the plain language of the policy and insist their reading—either requiring or not requiring the acquisition of a replacement vehicle—is correct. Yet, whether the insurance coverage was triggered without Bell having actually acquired a replacement vehicle is a question of law integral to Bell's breach of contract claim. *See Murray-Kaplan*, 617 S.W.3d at 493 ("The interpretation of an insurance policy is a question of law.").

By construing all allegations favorably to Bell, as is the appropriate review for a motion to dismiss, we find the policy language does not foreclose Bell's claim. *See Lee*, 618 S.W.3d at 261 (quoting *Mitchell*, 596 S.W.3d 122–23) (emphasis added) ("[T]his Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader."). Giving the pleadings their broadest intendment, Bell's case theory *may* be supported by the insurance policy language.

Bell's amended petition survives a motion to dismiss if an ordinary person of average understanding could interpret "comparable value" under sections 6(c) and 6(d) as requiring Shelter pay sales tax and fees without the acquisition of a replacement vehicle. Bell's amended petition does not allege that she actually incurred sales tax or fees nor that she acquired a replacement vehicle because neither is necessary under Bell's contract interpretation of the disputed insurance policy provision. It logically follows that Bell omitted this information because it is unnecessary under Bell's interpretation of sections 6(c) and 6(d). Bell, in fact, conceded that she did not pay sales tax and fees on a replacement vehicle in her opposition to Shelter's motion to dismiss because her claim does not hinge on these facts. Again, Bell's

petition "merely must allege facts sufficient to state a cognizable cause of action." *Lee*, 618 S.W.3d at 261 (citation omitted).

In reviewing a motion to dismiss, we need not determine whether Bell or Shelter properly interpreted sections 6(c) and 6(d) of the insurance policy and, thus, whether Shelter breached its duty to Bell and other class members. Rather, the relevant question is whether Bell alleged facts that, if eventually proven, would entitle Bell and other class members to relief on her claim that Shelter breached the insurance policy. *See Murray-Kaplan*, 617 S.W.3d at 493. "This distinction clarifies why courts must take the petition's allegations as true, grant them their broadest possible intendment, and construe all allegations favorably to the pleader." *Id.*

Giving the pleadings their broadest intendment and construing all allegations favorably to Bell, her petition sufficiently alleges those facts necessary to forward her breach of contract claim. We need not address whether Bell or Shelter correctly interpreted the vehicle insurance policy, only that Bell alleged a plausible interpretation under the policy language as pleaded in the amended petition when construing all allegations favorably to Bell. The appropriate interpretation is a question of law for the circuit court to resolve in further proceedings but not on a motion to dismiss. Bell's amended petition is legally adequate, and the circuit court erred in granting Shelter's motion to dismiss.

### Conclusion

We reverse and remand the circuit court's judgment for further proceedings consistent with this opinion.

_Janet Sutton_
Janet Sutton, Judge

Edward R. Ardini, Jr., P.J., and Anthony Rex Gabbert, J. concur.

9