

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| JOHN DOE B.P., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD76155 |
| | ) | |
| CATHOLIC DIOCESE OF KANSAS CITY-ST. JOSEPH, | ) | Opinion filed: March 11, 2014 |
| | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**The Honorable Ann Mesle, Judge**

Before Division Four: James E. Welsh, Chief Judge,
Joseph M. Ellis, Judge and Larry D. Harman, Special Judge

John Doe B.P. ("Appellant") appeals from the dismissal of his claims against the Catholic Diocese of Kansas City-St. Joseph ("the Diocese") in his action related to sexual abuse allegedly suffered at the hands of Father Michael Tierney when Appellant was approximately thirteen years old. For the following reasons, the judgment is affirmed.

As a basis for his petition, Appellant asserted the following basic facts. In the early 1970s, Father Tierney was assigned by the Diocese to St. Elizabeth's parish in Kansas City, Missouri, where Appellant attended school and went to church. Over time, Father Tierney befriended Appellant and his family. Father Tierney would talk to

Appellant in the hallways, would ask Appellant for help with various things, and took him out to eat at times. Sometime during the 1971-72 school year, Father Tierney asked Appellant to help move some things at his mother's home. While in the home of Father Tierney's mother, Father Tierney asked Appellant to go to the bedroom and, when Appellant refused, Father Tierney tackled Appellant, forcibly held him down, and fondled, caressed, and otherwise touched Appellant's chest, buttocks, anus, genitalia, and thighs. Appellant repressed the memory of that event until October 2008.

On September 29, 2010, Appellant filed his petition against Father Tierney and the Diocese. With regard to the Diocese, Appellant asserted claims of (I) childhood sexual abuse, (II) battery, (III) breach of fiduciary duty/confidential relationship, (IV) failure to supervise children, (V) intentional failure to supervise clergy, (VI) negligent supervision/retention, (VII) constructive fraud, (VIII) fraud, (IX) fraudulent misrepresentation, (X) conspiracy to commit fraud or constructive fraud, (XI) intentional infliction of emotional distress, and (XII) negligent infliction of emotional distress. Those claims were likewise asserted against Father Tierney with the exception of the negligent supervision of clergy claim.

The Diocese filed multiple motions seeking to have the various claims against it dismissed. Ultimately, the trial court dismissed all of the claims against the Diocese. Subsequently, Appellant voluntarily dismissed his claims against Father Tierney without prejudice.[1] Appellant now brings six points on appeal, challenging the dismissal of some of his claims against the Diocese.

---

[1] In his third amended petition, Appellant had been allowed to add Thomas Reardon and Msgr. Thomas O'Brien as additional defendants and to assert claims of failure to supervise children against those defendants. These claims were likewise voluntarily dismissed by Appellant.

2

This Court reviews *de novo* a trial court's dismissal based upon a failure to state a claim upon which relief may be granted. **Ward v. West County Motor Co.**, 403 S.W.3d 82, 84 (Mo. banc 2013). In conducting our review, the facts contained in the petition are treated as true and construed liberally in favor of the plaintiff. **Doe v. Roman Catholic Diocese of St. Louis**, 311 S.W.3d 818, 821 (Mo. App. E.D. 2010). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiff[] to relief, then the petition states a claim." **Ward**, 403 S.W.3d at 84.

Appellant's first three points challenge the trial court's dismissal of his claim for intentional failure to supervise clergy.[2] Though they make different arguments, the differences between them are subtle, and there is a significant amount of overlap. All of the claims assert that the trial court interpreted too narrowly the holding of the Missouri Supreme Court in *Gibson v. Brewer*, 952 S.W.2d 239, 248 (Mo. banc 1997), wherein the Supreme Court set forth the elements of a cause of action for intentional failure to supervise clergy. "In *Gibson*, . . . the Missouri Supreme Court held that, although the First Amendment barred negligence-based claims against a religious organization for

---

[2] The Diocese contends that Appellant abandoned his cause of action for intentional failure to supervise clergy by failing to include such a claim in the amended petitions that were filed following the trial court's dismissal of that claim. "The general rule is that the filing of an amended pleading operates as an 'abandonment' of the original petition." **Beckman v. Miceli Homes, Inc.**, 45 S.W.3d 533, 543 (Mo. App. E.D. 2001). "Thus, it has been held that an amendment to a pleading abandons any prior pleadings not referred to or incorporated into the new pleading, and the abandoned pleading may not be considered for any purpose." **Id**. (internal quotation and citation omitted). An exception to this rule has been established, however, where the reason for dismissal of the count is not correctable by an amended pleading and re-filing those claims would be a useless procedural gesture. **Prayson v. Kansas City Power & Light Co.**, 847 S.W.2d 852, 859 (Mo. App. W.D. 1992). The trial court dismissed Appellant's intentional failure to supervise clergy claim because Appellant's pleadings reflected that the alleged sexual contact occurred in the home of Father Tierney's mother and failed to establish that the tortious activity occurred on premises owned or controlled by the Diocese or that Father Tierney was using chattel owned by the Diocese, as required by *Gibson*. As a result, the court determined that Appellant failed to state a claim for which relief could be granted. Since this problem was not correctable by an amended pleading, the inclusion of this claim in Appellant's amended petitions would have been a useless procedural gesture. *See* **Id**. As the exception to the abandonment rule is applicable, we decline to dispose of Appellant's first three points summarily based upon abandonment.

3

sexual abuse conducted by one of its clergy, the plaintiff could bring a claim for *intentional* failure to supervise clergy." ***D.T. v. Catholic Diocese of Kansas City-St. Joseph***, Case No. WD 76025, 2013 WL 5979189 at *7 (Mo. App. W.D. 2013) (emphasis in original). As to the elements of that cause of action, the Missouri Supreme Court stated:

> A cause of action for intentional failure to supervise clergy is stated if (1) a supervisor (or supervisors) exists (2) the supervisor (or supervisors) knew that harm was certain or substantially certain to result, (3) the supervisor (or supervisors) disregarded this known risk, (4) the supervisor's inaction caused damage, and (5) the other requirements of the Restatement (Second) of Torts, section 317 are met.

***Gibson***, 952 S.W.2d at 248. Section 317 of the Restatement (Second) of Torts (1965), in turn, provides that a master has a duty to control a servant while the servant is acting outside the scope of employment and to prevent him from intentionally harming others when:

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows . . . that he has the ability to control his servant, and

(ii) knows . . . of the necessity and opportunity for exercising such control.

In dismissing Appellant's claim, the trial court noted that a cause of action for intentional failure to supervise clergy requires that the underlying misconduct occur on premises in possession or control of the Diocese or in a place where Father Tierney was only privileged to enter based upon his status as servant of the Diocese. The trial

4

court dismissed the claim because Appellant's petition established that the alleged sexual misconduct occurred at the home of Father Tierney's mother and did not aver that the Diocese owned or had any right to occupy or control that private residence.

In his first point, Appellant contends that the trial court too narrowly construed the premises requirement of *Gibson* in dismissing his claim for intentional failure to supervise clergy. He argues that Father Tierney's mother's house should be considered property under Diocese control for the purposes of analyzing a claim under *Gibson* because Appellant was only present at that location because he and his family trusted Father Tierney as a priest.

This Court rejected an identical argument in ***D.T. v. Catholic Diocese of Kansas City-St. Joseph***, Case No. WD 76025, 2013 WL 5979189 at *6 (Mo. App. W.D. 2013), wherein a different plaintiff asserted a claim against the Diocese based upon Father Tierney having sexually assaulted him in the home of Father Tierney's mother and in a hotel room. Noting that the Eastern District had rejected a similar argument in ***Doe v. Roman Catholic Archdiocese of St. Louis***, 347 S.W.3d 588, 593 (Mo. App. E.D. 2011), this Court concluded that neither Father Tierney's mother's home nor the hotel room could be considered property possessed by the Diocese or property upon which Father Tierney was privileged to enter only because of his status as a priest as required by *Gibson*. *Id*. The fact that Appellant decided to go to the home of Father Tierney's mother and to the hotel room because of Father Tierney's status as a priest did not alter that fact. *Id*.

For the same reasons we rejected this argument in *D.T.*, we must reject Appellant's claim in the case at bar. The fact that Appellant chose to go to the house

5

because Father Tierney was a priest does not establish Diocese control of the property or that Father Tierney was privileged to enter upon that property only because of his status as an employee of the Diocese. Point denied.

In his second point, Appellant argues that his averments related to "grooming" activity that had occurred on Diocese property prior to the incident in the home were sufficient to satisfy the premise requirement of *Gibson*. Appellant claims that Father Tierney's actions in befriending him and obtaining his trust were inseparable from the incident of sexual abuse that later occurred in the home of Father Tierney's mother.

Identical arguments to those advanced by Appellant have previously been rejected by both the Western and Eastern Districts of this Court in **D.T. v. Catholic Diocese of Kansas City-St. Joseph**, Case No. WD 76025, 2013 WL 5979189 at *6 (Mo. App. W.D. 2013), and **Doe v. Roman Catholic Archdiocese of St. Louis**, 347 S.W.3d 588, 593 (Mo. App. E.D. 2011). "The so-called 'grooming' cited by [Appellant] does not qualify as sexual abuse, and, as such, does not satisfy the fifth requirement of a claim for intentional failure to supervise, which requires the sexual abuse to occur on property possessed by the church." **Doe**, 347 S.W.3d at 593. Further, none of the case law cited by Appellant supports his claim that the "grooming" activities, which were otherwise innocent and some of which occurred on property belonging to the Diocese, were inseparable from the ultimate acts of sexual abuse alleged to have occurred in the home of Father Tierney's mother. **D.T.**, 2013 WL 5979189 at *6. Point denied.

In his third point, Appellant contends that the trial court misinterpreted *Gibson* as holding that section 317 of the Restatement (Second) of Torts is the only mechanism available for finding an employer of clergy responsible for the torts of its employee that

6

are committed outside the scope of employment. He claims that *Gibson* left open the potential for other mechanisms to give rise to a claim for intentional failure to supervise clergy. This Court addressed, at length, arguments mirroring those now advanced by Appellant in **D.T. v. Catholic Diocese of Kansas City-St. Joseph**, Case No. WD 76025, 2013 WL 5979189 at \*7-12 (Mo. App. W.D. 2013). In short, Appellant is incorrect that the language of *Gibson* would allow for other elements to be substituted in favor of Section 317 of the Restatement (Second) of Torts (1965). **Id**. at \*11. "[O]ur Supreme Court has announced a very specific number of elements that must be satisfied in order to establish the tort of intentional failure to supervise clergy," and "[p]ursuant to the mandate of the Missouri Constitution, once the elements of this cause of action have been announced by the Missouri Supreme Court, only that court may modify the elements." **Id**. This Court is not at liberty to adopt alternative elements to the tort of intentional failure to supervise clergy established in *Gibson*. **Id**. at 12. Point denied.

In his fourth point, Appellant generally contends that the trial court erred in dismissing his claims because the trial court misinterpreted *Gibson* as precluding supervisory torts, aside from intentional failure to supervise clergy, whether based on intentional or negligent actions, from being brought against the Diocese. He further generally contends that "*Gibson* specifically recognizes that liability against a religious entity will lie in circumstances that include those found in this case."

Appellant had multiple claims dismissed by the trial court in multiple different orders. By failing to identify, in his point relied on or in his argument, what ruling or rulings on the part of the trial court he claims to be erroneous or what specific cause or

7

causes of action were improperly dismissed, Appellant fails to comply with the requirements of Rule 84.04. "Under Rule 84.04, it is not proper for the appellate court to speculate as to the point being raised by the appellant and the supporting legal justification and circumstances." *Willis v. Missouri Farm Bureau Servs., Inc.*, 396 S.W.3d 451, 454 (Mo. App. W.D. 2013) (internal quotation omitted). "Speculation on an appellant's arguments is not permitted by the appellate courts because such speculation would cast the court in the role of an advocate for the appellant." *Id.* (internal quotation omitted). Unable to discern, without resorting to speculation, exactly what ruling or rulings are being challenged or which causes of action are claimed to have been erroneously dismissed, we must decline to address this point. We gratuitously note that, while we agree with Appellant's general contention that *Gibson* does not bar all conceivable negligence actions against religious organizations,[3] the trial court properly interpreted *Gibson* as barring all of the claims asserted by Appellant against the Diocese that stemmed from Father Tierney's alleged sexual abuse of Appellant and the Diocese supervision of Father Tierney and/or Appellant. *See D.T.*, 2013 WL 5979189 at *5; *Gibson*, 952 S.W.2d at 245-50. Point denied.

In his fifth point, Appellant contends that the trial court erred in dismissing his claim against the Diocese for negligent failure to supervise a child because the trial court misinterpreted *Gibson* as precluding such a claim. This court has previously rejected identical arguments to those advanced by Appellant in *D.T. v. Catholic Diocese of Kansas City-St. Joseph*, Case No. WD 76025, 2013 WL 5979189 at *4 (Mo. App. W.D. 2013). In that case, we concluded that claims that the Diocese was

---

[3] Indeed, *Gibson* expressly notes that a religious organization could be vicariously liable for acts of its clergy related to the negligent operation of a motor vehicle or for negligent maintenance of its property resulting in a dangerous condition. *Gibson*, 952 S.W.2d at 246.

8

negligent in its supervision of another child, who claimed to have been molested by Father Tierney in the home of Father Tierney's mother and in a hotel room, neither of which were owned or controlled by the diocese, were precluded by *Gibson*, which is binding on this Court. *Id*. at \*5. We further noted that the Eastern District, addressing the same basic arguments, interpreted *Gibson* to bar all negligence claims against a diocese resulting from the sexual abuse of a minor parishioner by a priest. *Id*. (citing ***Doe v. Roman Catholic Archdiocese of St. Louis***, 347 S.W.3d 588, 595 (Mo. App. E.D. 2011) & ***Doe v. Roman Catholic Archdiocese of St. Louis***, 311 S.W.3d 818 (Mo. App. E.D. 2010)). For the same reasons stated in ***D.T.***, Appellant's fifth point in the case at bar is denied.

In his sixth point, Appellant argues that the trial court erred in dismissing his various negligence claims based upon *Gibson* because *Gibson* was incorrectly decided. He claims *Gibson* misinterpreted and misapplied the Free Exercise Clause and the Establishment Clause in holding that the First Amendment barred negligence-based claims against religious organizations for sexual abuse conducted by one of its clergy. This point must be summarily denied.

"A claim that the Missouri Supreme Court has incorrectly decided a previous case or cases is not cognizable in the Missouri Court of Appeals." ***Independence-Nat. Educ. Ass'n v. Independence Sch. Dist.***, 162 S.W.3d 18, 21 (Mo. App. W.D. 2005). "Missouri's Constitution expressly states that the Missouri Supreme Court 'shall be the highest court in the state' and that its 'decisions shall be controlling in all other courts.'" ***Doe***, 311 S.W.3d at 822 (quoting ***Mo. Const. art. V, Section 2***). "As such, we are constitutionally bound to follow the most recent controlling decision of the Missouri

9

Supreme Court, and inquiries questioning the correctness of such a decision are improper." *Id.* (internal quotation omitted). "Until the Missouri Supreme Court or the United States Supreme Court declares differently, *Gibson* constitutes controlling law in Missouri, law which we are bound to apply." *Doe*, 347 S.W.3d at 595. Point denied.

The judgment is affirmed.

_____
Joseph M. Ellis, Judge

All concur.