Sprinkel went through the Safe Sanctuaries program after he was hired by the Shelbina Church. His information was submitted to the Safe Sanctuaries program, and a background check was obtained by the Conference which disclosed: no criminal history or sex offender registration information on file with the Missouri State Highway Patrol; no employee disqualification list information on file with the Missouri Department of Health and Senior Services; no employee disqualification registry on file with the Missouri Department of Mental Health; and no child abuse or neglect information on file with the Missouri Department of Social Services. Sprinkel was also required to submit three reference forms to the Conference, including one from his employer and two additional references. Sprinkel submitted reference forms completed by Pastor Clow, who was his supervisor at the time he underwent the screening, as well as Allen Hickerson and Shawn Burnley. Each form submitted to the Conference rated Sprinkel as "excellent" or "good" in character, morality, ability to relate to youths, and ability to relate to children.[1] The Conference *649 took no steps to follow up on the information contained in the reference forms, but instead accepted all positive or negative responses on the form and determined Sprinkel was Safe Sanctuaries certified.
In November 2004, the Shelbina Church adopted its own Safe Sanctuary policy ("the Policy"). Among other guidelines, the Policy included a provision that two adults should always be present during activities where youth or children were present. Pastor Clow took steps to enforce this Policy, such as checking on youth activities and questioning volunteers to ensure they were never alone with the children or youth. Sprinkel was aware of this Policy.
3. Appellant's Interactions with Sprinkel and the Incident Giving Rise to Appellant's Claims
Sometime in the fall of 2005, Appellant began attending the Shelbina Church's after-school youth program, where Appellant would see Sprinkel approximately one or two times per week. Appellant, who was twelve years old at the time, attended the after-school program because his friends went, it was fun, and he could play video games and basketball.
On the afternoon of January 6, 2006, Appellant's school was released early that day, so Sprinkel invited Appellant to come to his house to play video games until it was time to go to the Church's after-school program. Although Sprinkel's wife was present when Appellant first arrived, she left shortly thereafter to run an errand. During the time Sprinkel was alone with Appellant, Sprinkel showed Appellant pornography on the computer and touched Appellant's genitals. Immediately after, Appellant left Sprinkel's house, went home, and reported the incident to his father. Based on Sprinkel's actions against Appellant on January 6, 2006, Sprinkel was convicted by a jury of first-degree child molestation.
4. Information Discovered after Sprinkel's Molestation of Appellant
After the allegations against Sprinkel came to light, Pastor Clow's wife, who also served as the Shelbina Church's secretary, conducted an internet search about Sprinkel. Ms. Clow found articles written before Sprinkel was hired by the Church that were about a prior criminal case filed against Sprinkel in the Circuit Court of Logan County, Illinois. Although Sprinkel was acquitted in the case, it involved an incident of sexual molestation of a child.
After the incident involving Appellant occurred, Pastor Clow held meetings with some of the parents of children attending the Church's youth programs. As a result, Pastor Clow learned that in August 2005, Sprinkel invited at least two other boys from the Church's after-school program to his house and showed them pornography.
B. Relevant Procedural Posture
Appellant filed his original petition alleging various claims against Respondents on January 7, 2013. During the course of the litigation, however, Appellant was twice granted leave of the court to file amended petitions. On December 10, 2015, Appellant filed his Second Amended Petition asserting the following ten claims: (I) child sexual abuse; (II) battery; (III) breach of fiduciary/confidential relationship; (IV) failure to supervise children; (V) negligent supervision of Sprinkel; (VI) negligent infliction of emotional distress; (VII) intentional failure to supervise Sprinkel; (VIII) breach of duty to adopt and implement preventative measures/failure to warn; (IX) fraud/misrepresentation;
*650 and (X) Restatement (Second) of Torts, section 324(A) (1965).[2] ,[3]
Subsequently, Respondents each filed a motion for summary judgment, which the trial court ultimately granted and entered summary judgment in favor of Respondents on all of Appellant's remaining claims. This appeal followed.
II. DISCUSSION
Appellant raises six points on appeal, which we will discuss in the following order. In his third and sixth points on appeal, Appellant asserts the trial court erred in granting summary judgment as to Counts III through VIII and Count X on First Amendment grounds.[4] In his fifth point on appeal, Appellant maintains the trial court erred in granting summary judgment on Count VII because the uncontroverted facts demonstrated Appellant could not establish an element of his claim. Then, in his first point on appeal, Appellant contends the trial court erred in granting summary judgment on Counts I and II because it found the Church could not be held liable for Sprinkel's intentionally tortious acts.
A. Standard of Review
A trial court's decision to grant summary judgment is an issue of law this Court reviews de novo. Doe v. Roman Catholic Archdiocese of St. Louis , 347 S.W.3d 588, 590 (Mo. App. E.D. 2011) (" Doe II "). Summary judgment is proper only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Id. We review the record in the light most favorable to the non-moving party, accepting all reasonable inferences in favor of that party as true. Id. at 591. We accept facts contained in affidavits or otherwise produced in support of the motion for summary judgment as true unless they are contradicted by the non-movant's response to the motion. Id. A defendant may establish its right to judgment as a matter of law by showing one of the following: "(1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense." Id.
If the movant succeeds in establishing its right to judgment as a matter of law, the non-moving party must show that at least one of the material facts asserted by the moving party as undisputed is, in fact, genuinely disputed. Id. However, only *651 genuine disputes of material facts will preclude summary judgment, and to prove such a dispute exists, the non-moving party may not rely on mere allegations or denials of the pleadings, but must produce affidavits, depositions, answers to interrogatories, or admissions on file. Doe v. Ratigan , 481 S.W.3d 36, 41 (Mo. App. W.D. 2015) ; Doe II , 347 S.W.3d at 591. In the summary judgment context, a fact is material only if it is one from which the right to judgment flows. Ratigan , 481 S.W.3d at 41 (citing Goerlitz v. City of Maryville , 333 S.W.3d 450, 453 (Mo. banc 2011) ).
We will affirm the grant of summary judgment on any legal theory supported by the record, whether or not it was the basis relied upon by the trial court. Owners Insurance Company v. Parkison , 517 S.W.3d 608, 612 (Mo. App. E.D. 2017) ; Ratigan , 481 S.W.3d at 41.
B. The Trial Court's Grant of Summary Judgment as to Counts III-VIII and Count X
We begin our analysis with Appellant's third and sixth points on appeal, which challenge the trial court's finding that the Establishment Clause of the First Amendment to the United States Constitution ("the Establishment Clause") precluded the court from entertaining a number of Appellant's claims. Specifically, the court granted summary judgment as to Counts III-VIII and Count X on First Amendment grounds. Before we proceed to the merits of Appellant's claims on appeal, we must first consider the implications of the First Amendment in this case.
1. A Threshold Issue-The Establishment Clause of the First Amendment
The Establishment Clause provides in relevant part, "Congress shall make no law respecting an establishment of religion ...." U.S. Const., Amend. I. The Establishment Clause, as part of the First Amendment, applies to the states by incorporation into the Fourteenth Amendment. Gibson v. Brewer , 952 S.W.2d 239, 246 (Mo. banc 1997).[5] The provision's mandate applies to any exercise of state power, including judicial decision on a state's common law. Id.
a. The Seminal Case: Gibson v. Brewer
In Gibson v. Brewer , the Missouri Supreme Court grappled with the implications of the Establishment Clause in a case involving allegations of sexual abuse by a priest. Id. at 243-44, 246-50. The plaintiff alleged the priest had touched him inappropriately and reported the occurrence to his parents. Id. at 243. The parents then reported the incident to the Catholic Diocese of Kansas City-St. Joseph, the governing body of the Church, which did not respond in a satisfactory manner to the plaintiff's parents. Id.
The plaintiff filed an action against the Diocese in tort, alleging both claims of negligence and intentional acts. Id. at 243-44. Specifically, the plaintiff pleaded nine counts including battery, negligent hiring/ordination/retention, negligent failure to supervise, negligent infliction of emotional distress, breach of fiduciary duty, conspiracy, agency liability, and independent negligence of the Diocese. Id. The significant issue addressed by our Supreme Court was whether tort claims involving negligence and intentional acts may or may not be pursued against a religious organization for the conduct of its clergy. See id. at 246-50.
*652 In its analysis on this issue, the Gibson Court reviewed United States Supreme Court and Missouri court precedent and explained:
Questions of hiring, ordaining, and retaining clergy [ ] necessarily involve interpretation of religious doctrine, policy, and administration. Such excessive entanglement between church and state has the effect of inhibiting religion, in violation of the First Amendment.
By the same token, judicial inquiry into hiring, ordaining, and retaining clergy would result in an endorsement of religion, by approving one model for church hiring, ordination, and retention of clergy.
...
Adjudicating the reasonableness of a church's supervision of a cleric-what the church 'should know'-requires inquiry into religious doctrine. ... [T]his would create an excessive entanglement, inhibit religion, and result in the endorsement of one model of supervision.
...
Whether negligence exists in a particular situation depends on whether or not a reasonably prudent person would have anticipated danger and provided against it. In order to determine how a 'reasonably prudent Diocese' would act, a court would have to excessively entangle itself in religious doctrine, policy, and administration.
Id. at 246-47, 249-50 (internal citations omitted) (quotations in original).
Based on the foregoing, our Missouri Supreme Court issued two significant holdings. First, the Gibson Court held a court may not entertain claims against a religious organization if analysis of the issues involved would require a determination on ecclesiastical matters, such as "questions of religious doctrine, polity, and practice." See id. at 246-50 ; see also Weaver v. African Methodist Episcopal Church, Inc. , 54 S.W.3d 575, 580 (Mo. App. W.D. 2001). The Court further held a court may only impose civil liability against a religious organization for negligent acts if the claims can be resolved based on "neutral principles of law."[6] Gibson , 952 S.W.2d at 246.[7] Applying this rule to the types of negligence claims asserted against the Diocese-negligent hiring/ordination/retention, negligent supervision of clergy, negligent infliction of emotional distress, and other independent claims of negligence of the Diocese-the Court found analysis of such claims would impermissibly require inquiry into ecclesiastical matters including the religious organization's relationship as a master to its servants. See id. at 246-50 ; see also D.T. v. Catholic Diocese of Kansas City-St. Joseph , 419 S.W.3d 143, 146-47 (Mo. App. W.D. 2013) (similarly describing Gibson ). Accordingly, the Court held the Establishment Clause of the First Amendment to the United States Constitution barred each of these negligence-based claims. See Gibson , 952 S.W.2d at 246-50.
Second, the Gibson Court found "liability for intentional torts can be imposed *653 without excessively delving into religious doctrine, polity, and practice." Id. at 249. Moreover, "conduct intended or certain to cause harm need not be tolerated under the First Amendment." Id. at 248. Thus, the Missouri Supreme Court held claims of intentional failure to supervise clergy are not barred by the First Amendment.[8] Id.
b. Subsequent Treatment of Gibson
Following the Gibson decision, Missouri appellate courts have on several occasions upheld and expanded upon its First Amendment principles.
In D.T. , a parishioner of the Catholic Diocese of Kansas City-St. Joseph was sexually assaulted by a priest as a child and later filed suit against the Diocese. 419 S.W.3d at 145-46. The Western District considered whether Gibson precluded the plaintiff's claim against the Diocese for negligent failure to supervise children. D.T. , 419 S.W.3d at 148-49. The Court held the claim was barred, as it found a claim for negligent failure to supervise children would be inextricably intertwined with claims the Diocese failed to adequately supervise its priest by keeping him away from children. Id. at 148. To entertain such a claim would violate Gibson 's rules that courts may not apply a negligence standard to, (1) matters involving a religious organization's supervision of its clergy; or (2) the actions of a religious organization in dealing with its parishioners. D.T. , 419 S.W.3d at 148-49 ; see also Ratigan , 481 S.W.3d at 51-52 and John Doe B.P. v. Catholic Diocese of Kansas City-St. Joseph , 432 S.W.3d 213, 219 (Mo. App. W.D. 2014) and Doe v. Roman Catholic Diocese of St. Louis , 311 S.W.3d 818, 820, 821-24 (Mo. App. E.D. 2010) (" Doe I ") (similarly relying on Gibson to affirm dismissals of claims for negligent failure to supervise children).
In Doe I , our Court reviewed the dismissal of a plaintiff's claim for negligent failure to warn against the Roman Catholic Diocese of St. Louis. 311 S.W.3d at 819, 820-24. The trial court dismissed the claim, finding a determination on whether the Diocese owed the plaintiff a duty to warn would require an excessive entanglement into religious doctrine, policy, and administration. Id. at 820-21. Our Court affirmed the dismissal of the failure to warn claim, holding Gibson bars such claims. Doe I , 311 S.W.3d at 822-24 ; see also Nicholson v. Roman Catholic Archdiocese of St. Louis , 311 S.W.3d 825, 825-27 (Mo. App. E.D. 2010) (similarly holding).
In sum, Gibson and its progeny stand for the proposition that courts may not decide tort claims involving negligent acts if analysis of such claims would require the court to interfere with or interpret church doctrine, policy, polity, practice, or administration. 952 S.W.2d at 246-50 ; Ratigan , 481 S.W.3d at 51-52 ; John Doe B.P. , 432 S.W.3d at 219 ; D.T. , 419 S.W.3d at 146-49 ; Doe I , 311 S.W.3d at 822-24 ; Nicholson , 311 S.W.3d at 825-27 ; Weaver , 54 S.W.3d at 580-81. A court's involvement in such ecclesiastical matters would violate the Establishment Clause of the First Amendment by resulting in an excessive entanglement in religion. See id.[9] On the other *654 hand, claims of intentional torts are not barred by the First Amendment as these claims can be resolved without excessive intrusion into religious doctrine, polity, and practice. Gibson , 952 S.W.2d at 248, 249.
c. Whether Gibson Applies to the Present Case
In his briefs on appeal, Appellant argues at length that Gibson and its progeny are not applicable in this case. He first argues Gibson has been subsequently overruled by United States Supreme Court precedent or was improperly decided. To this point, the majority of Appellant's reply briefs relate to a recent United States Supreme Court decision of Trinity Lutheran Church of Columbia, Inc. v. Comer , --- U.S. ----, 137 S.Ct. 2012, 198 L.Ed.2d 551 (2017). Alternatively, Appellant maintains Gibson and its progeny do not apply because Sprinkel was not designated "clergy" by the United Methodist Church's guidelines.
First, Appellant's reliance on Comer is misplaced, because in that case, the Supreme Court held a government entity's actions in denying a church a generally available benefit solely because it is a church violated the Free Exercise Clause of the First Amendment to the United States Constitution. See id. at 2019, 2021-22, 2025. While Gibson does mention the Free Exercise Clause in its opinion, we find the rules from Gibson and its progeny are grounded in the Establishment Clause as they prohibit courts from deciding cases which would result in an excessive entanglement with religion by requiring courts to interpret church doctrine, policy, and administration. See Gibson , 952 S.W.2d at 246-50. Since Comer does not directly question Gibson 's reasoning nor contradict its holding, and because we cannot plainly say that Gibson conflicts with Comer , Comer does not authoritatively direct us to disregard Gibson and its progeny. See Doe I , 311 S.W.3d at 823-24.
Appellant also cites numerous lower federal court decisions and appellate decisions from other states to support his assertion that Gibson was wrongly decided. However, these decisions are not binding on this Court. See Doe I , 311 S.W.3d at 823. Instead, "we are constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court[.]" Id. at 822 (quotations omitted). Because Appellant has failed to cite any binding precedent requiring us to ignore our Supreme Court's holding in Gibson , the case remains controlling law in Missouri and we are bound to follow it. See Doe I , 311 S.W.3d at 824 ; see also John Doe B.P. , 432 S.W.3d at 219 and D.T. , 419 S.W.3d at 149-50 and Doe II , 347 S.W.3d at 595-96 and Nicholson , 311 S.W.3d at 826-27 (similarly holding and applying Gibson to negligence-based claims against religious organizations arising out of sexual misconduct of clergy).
Next, we turn to Appellant's contention that the First Amendment has no bearing on this case because Sprinkel was not designated "clergy" by the United Methodist Church's guidelines, which Appellant asserts should determine whether his claims against Respondents implicate the First Amendment. In contrast, the Conference maintains it is the nature of the dispute which triggers First Amendment scrutiny. Still yet, the Shelbina Church argues we should examine whether Sprinkel's position authorized him to conduct religious services and perform other religious duties *655 to determine whether the First Amendment applies to this case.
Broadly stated, the First Amendment prohibits the government from involving itself in ecclesiastical matters, including but not limited to, church doctrine and the hiring, firing, and retention of church employees performing ecclesiastical tasks or rituals of a religious nature and/or ministers. See Gibson , 952 S.W.2d at 246-50 ; Weaver , 54 S.W.3d at 580. As declared in Gibson and reiterated in that case as well as others, the question of whether the First Amendment is implicated by civil claims against a religious organization depends on whether "neutral principles of law can be applied without determining questions of religious doctrine, polity, and practice[.]" See, e.g. , 952 S.W.2d at 246-50.
In this case, there is no question Sprinkel was assigned duties of a religious nature such as educating children on the religious doctrine of the United Methodist Church, planning literature for the youth to study, praying with the children, reading scripture from the Bible, and giving the sermon to the full congregation on "Youth Sundays." These religious components of Sprinkel's position are sufficient to implicate the First Amendment because a judicial decision on matters involving the Church's relationship with Sprinkel would interfere with ecclesiastical matters such as the Church's retention of and its control over who will personify its beliefs. See generally Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C. , 565 U.S. 171, 188, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012) ; Gibson , 952 S.W.2d at 246-50 ; Weaver , 54 S.W.3d at 580 ; see also H.R.B. v. J.L.G. , 913 S.W.2d 92, 99 (Mo. App. E.D. 1995) (the First Amendment prohibits secular courts from judging sectarian matters).
For the foregoing reasons, Appellant's claims related to Sprinkel cannot be resolved without a court impermissibly involving itself in ecclesiastical matters and questions of religious doctrine, polity, and practice. See Gibson , 952 S.W.2d at 246-50 ; Weaver , 54 S.W.3d at 580. Thus, we find an analysis under Gibson and its progeny is required here regardless of whether Sprinkel was designated "clergy," and Appellant's assertion that the First Amendment has no bearing on this case is without merit.
2. Application of the First Amendment to Appellant's Claims
With the preceding case law in mind, we now turn to Appellant's third and sixth points on appeal in which he argues the trial court erred in relying on Gibson to find the First Amendment bars his claims enumerated in Counts III, IV, V, VI, VII, VIII, and X. For ease of reading, we will address each of Appellant's claims that are affected by the First Amendment in this section.
a. Negligence-Based Claims (Counts IV, V, VI, VIII, and X)
Appellant asserted five negligence-based claims against the Respondents: failure to supervise children against the Shelbina Church (Count IV); negligent supervision of Sprinkel against the Shelbina Church (Count V); negligent infliction of emotional distress against the Shelbina Church (Count VI); breach of duty to adopt and implement preventative measures/failure to warn against the Shelbina Church (Count VIII); and a negligence claim under the Restatement (Second) of Torts section 324(A) against the Conference (Count X). Pursuant to Gibson and its progeny, the trial court did not err in granting summary judgment in favor of Respondents on these claims on First Amendment grounds.
Gibson specifically held claims for negligent supervision of clergy (Count V) and negligent infliction of emotional distress *656 (Count VI) are precluded by the First Amendment. 952 S.W.2d at 247, 249. Because analysis of these claims would have required an impermissible inquiry into religious doctrine, policy, and administration, the trial court did not err in granting summary judgment in favor of the Shelbina Church on Counts V and VI. See id.
Gibson also explicitly bars Appellant's independent negligence claims against Respondents. See id. at 249-50. In Count VIII, Appellant alleged the Church was negligent in failing to take reasonable measures to warn Appellant about Sprinkel's proclivities regarding young children and/or to protect Appellant from Sprinkel. Additionally, Appellant's Count X under the Restatement (Second) of Torts section 324(A) alleged negligent performance of an undertaking based on the Conference's failure to exercise reasonable care in its Safe Sanctuaries screening of Sprinkel. Both are similar to the independent negligence claims brought by the plaintiff in Gibson asserting the Diocese was negligent in its actions or omissions relating to the prevention and/or response to child sexual abuse claims. See 952 S.W.2d at 249. As these claims would have resulted in the trial court excessively entangling itself in religious doctrine, policy, and administration by determining how a reasonably prudent church would have acted, the court did not err in granting summary judgment as to Counts VIII and X.[10] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 249-50 (similarly finding); see also Doe I , 311 S.W.3d at 820-24 and Nicholson , 311 S.W.3d at 826-27 (applying Gibson to affirm dismissal of negligence-based claims including failure to warn).
Furthermore, subsequent cases from this Court and the Western District also prevent Appellant from pursuing his claim of negligent supervision of children against the Church (Count IV). See Ratigan , 481 S.W.3d at 51-52 ; John Doe B.P. , 432 S.W.3d at 219 ; D.T. , 419 S.W.3d at 148-50 ; Doe I , 311 S.W.3d at 820-24. For the court to decide this claim, it would have been called upon to delve into the Shelbina Church's policies regarding the screening of its employees, the adequacy and implementation of the Church's Safe Sanctuary Policy, and what information the Church and its employees knew or should have known regarding the risk of sexual abuse facing the Church youth. The inquiries required to decide this claim would have been inextricably intertwined to Appellant's claims regarding the Church's supervision of Sprinkel. See D.T. , 419 S.W.3d at 148. In essence, analysis of this claim would have violated Gibson by requiring the trial court to apply a negligence standard to, (1) matters involving the Church's supervision of Sprinkel; and (2) the actions of the Church in dealing with its parishioners, the youth and children of the Church. See D.T. , 419 S.W.3d at 148-49 ; see also Gibson , 952 S.W.2d at 246-47, 249. For these reasons, the trial court did not err in granting summary judgment in favor of the Church as to Count IV.
*657 b. Breach of Fiduciary/Confidential Relationship (Count III)
Appellant's Count III alleged Respondents entered into fiduciary and confidential relationships with him and breached their fiduciary duties and confidential relationships by, inter alia , failing to provide a safe environment for children, misrepresenting the safety of the Church for the children, failing to warn Appellant about Sprinkel, and establishing an environment where Sprinkel could sexually abuse Appellant. The trial court granted Respondents' motions for summary judgment on this claim, finding an inquiry into the existence of a fiduciary or confidential relationship between a religious organization and its parishioners violates the First Amendment. We agree.
In H.R.B. , this Court considered whether Missouri recognizes a cause of action against religious organizations for breach of fiduciary duty with respect to sexual misconduct of clergy. 913 S.W.2d at 97-99. After completing a review of the law from jurisdictions that do recognize such claims as well as those that reject them, our Court declared, "[w]e align ourselves with the jurisdictions that have refused to recognize breach-of-fiduciary-duty actions against clergy for sexual misconduct." Id. at 98. In so holding, this Court considered similar reasoning as that relied upon in Gibson , finding a determination on the plaintiff's breach of fiduciary duty claim would have inevitably required inquiry into the religious aspects of the relationship between the parties and the duties owed by the church to its parishioners. H.R.B. , 913 S.W.2d at 99 ; see also Gibson , 952 S.W.2d at 249 (applying a negligence standard to the actions of a church in dealing with its parishioners violates the First Amendment). Because secular courts are not allowed to judge sectarian matters, we found the plaintiff's claim for breach of fiduciary duty against the religious organization was not actionable. H.R.B. , 913 S.W.2d at 99.
Appellant has failed to point us to, and our research has revealed, no case compelling us to disregard this Court's decision in H.R.B . Accordingly, we find Appellant's claim for breach of a fiduciary or confidential relationship against Respondents was not actionable, see id. at 97-99, and the trial court did not err in granting summary judgment on Count III.
c. Conclusion as to Appellant's Third and Sixth Points on Appeal
In conclusion, we are guided by authority from Missouri Courts in finding the trial court could not have entertained Appellant's negligence-based claims and his breach of fiduciary/confidential relationship claim without interfering with and interpreting the doctrine, policy, polity, practice, and administration of the Respondents. Therefore, the First Amendment bars Counts III, IV, V, VI, VIII, and X. Point six and point three as to all claims except Appellant's claim for intentional failure to supervise Sprinkel (Count VII)[11] are denied.
3. Whether the Trial Court Erred in Granting Summary Judgment on Appellant's Claim for Intentional Failure to Supervise Sprinkel (Count VII)
In Appellant's fifth point on appeal, he maintains the trial court erred in granting summary judgment on Count VII alleging intentional failure to supervise Sprinkel against the Shelbina Church. We need not recount the parties' specific arguments or the trial court's judgment on this point *658 because we find Appellant has failed to satisfy an element of his claim-that Sprinkel abused Appellant while on Church property. See Owners , 517 S.W.3d at 612 and Ratigan , 481 S.W.3d at 41 (we can affirm the grant of summary judgment on any basis supported by the record); see also Doe II , 347 S.W.3d at 591 (summary judgment is proper if, inter alia , the claimant, after an adequate period of discovery, has not and will not be able to prove an element of his claim).
a. Relevant Law
The elements of a cause of action for intentional failure to supervise clergy, as stated by the Missouri Supreme Court in Gibson , are: (1) a supervisor exists; (2) the supervisor knew harm was certain or substantially certain to result; (3) the supervisor disregarded the known risk; (4) the supervisor's failure to act caused damage; and (5) the other requirements of the Restatement (Second) of Torts section 317 are met. Doe II , 347 S.W.3d at 591 (citing Gibson , 952 S.W.2d at 248 ). Restatement (Second) of Torts section 317 provides in pertinent part:
A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if:
(a) the servant
(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, ... and
(b) the master
(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.
Doe II , 347 S.W.3d at 591 (citing Restatement (Second) of Torts section 317 ). The failure to meet one of the preceding elements is fatal to Appellant's claim for intentional failure to supervise. Id. at 592.
As part of the "premises" requirement of the Restatement (Second) of Torts section 317(a)(i), the plaintiff must show the master owned, controlled, had a right to occupy or control the premises where the abuse occurred, or had a right to control the activity that occurred thereon. Doe II , 347 S.W.3d at 593 ; see also Weaver , 54 S.W.3d at 583. The limitations expressed in this section serve to restrict the master's liability for a servant's purely personal conduct outside the course and scope of employment to instances where either, (1) the master has control of the premises where the act occurred; or (2) the master, because of the employment relationship, has placed the servant in a position to obtain access to some premises that are not controlled by the master. Weaver , 54 S.W.3d at 582-83 ; see also Doe II , 347 S.W.3d at 592. In these instances where the servant is acting outside the course and scope of employment, which he is when he commits an intentional tort, it makes sense to limit the master's duty to supervise to situations where it would still be fair to hold the master liable for the servant's actions such as when the servant is on the master's premises. D.T. , 419 S.W.3d at 150.
b. Analysis
In this case, Sprinkel's sole act of sexual molestation against Appellant occurred while they were at Sprinkel's home. It is undisputed Sprinkel did not commit any acts of sexual abuse against Appellant while on the Shelbina Church's property.
*659 Appellant testified that prior to the incident on January 6, 2006, Sprinkel had never done anything he felt was sexually inappropriate. Further, Appellant testified he was at Sprinkel's house that afternoon for personal reasons, i.e., to play video games, and not for religious purposes.[12] Thus, Appellant admits the sexual molestation committed against him did not occur on premises owned by the Church. See Doe II , 347 S.W.3d at 589, 593 (similarly finding where it was undisputed the sexual abuse occurred at a priest's clubhouse, the plaintiff testified he was not there for religious purposes, and there was no allegation abuse was committed on church property).
Additionally, the Shelbina Church did not have any right to possess the home as the undisputed facts fail to establish the Church owned, controlled, or had a right to occupy or control the home or anything that happened there. See id. at 593 ; see also Weaver , 54 S.W.3d at 583. Moreover, Sprinkel was not allowed access to his own home solely because of his status as the Church's youth director. See D.T. , 419 S.W.3d at 150 (finding the priest would presumably be welcome at his mother's house, where child sexual abuse occurred, regardless of his occupation); but cf. Weaver , 54 S.W.3d at 582-83 (finding "premises" requirement was met or established where church possessed building for an authorized church function and the church elder who committed sexual harassment was privileged to enter building only as the servant of the church). As a result, Appellant fails to establish the premises requirement, an essential element of his claim for intentional failure to supervise clergy.
Nevertheless, Appellant argues the Shelbina Church should be held liable for Sprinkel's misconduct even though it did not occur on property possessed by the Church because the "grooming" activities, whereby Sprinkel befriended Appellant and obtained his trust prior to molesting him, was conducted primarily on Church property. This precise argument has been rejected by this Court and the Western District on at least three occasions. See John Doe B.P. , 432 S.W.3d at 217-18 ; D.T. , 419 S.W.3d at 151 ; Doe II , 347 S.W.3d at 593-94. "The so-called 'grooming' cited by Appellant does not qualify as sexual abuse, and, as such, does not satisfy the fifth requirement of a claim for intentional failure to supervise, which requires the sexual abuse to occur on the property possessed by the church." John Doe B.P. , 432 S.W.3d at 217 (quoting Doe II , 347 S.W.3d at 593 ); see also D.T. , 419 S.W.3d at 151.
Appellant also argues Sprinkel's house should be considered property under the Shelbina Church's control because Appellant was only present at Sprinkel's home because he trusted Sprinkel as the Church's youth director. However, we find this argument has also been rejected by the Western District on three separate occasions. See Ratigan , 481 S.W.3d at 50-51 ; John Doe B.P. , 432 S.W.3d at 217 ; D.T. , 419 S.W.3d at 151. In John Doe B.P. and D.T. , the Court held a priest's mother's house and a hotel room would not be considered property possessed by the Diocese or property upon which the priest was privileged to enter solely because of his status as a priest. 432 S.W.3d at 217 ; 419 S.W.3d at 151. The fact that the plaintiffs chose to go to those locations because of the priest's status as a priest did not establish *660 Diocese control of the property or that the priest was privileged to enter the property only because of his employment with the Diocese. Id.
In light of the foregoing, Appellant failed to establish the premises requirement of his claim for intentional failure to supervise clergy and the trial court did not err in granting summary judgment on Count VII. See Doe II , 347 S.W.3d at 591-92 (the failure to prove an element of intentional failure to supervise is fatal to such a claim). Point five is denied.
C. Whether the Trial Court Erred in Granting Summary Judgment as to Appellant's Claims for Child Sexual Abuse and Battery (Counts I and II)
Finally, we address Appellant's first point on appeal, in which he contends the trial court erred in granting summary judgment in favor of the Church on Counts I and II for the intentional torts of child sexual abuse and battery, respectively. Appellant advances four main arguments in support of this contention. First, Appellant argues the trial court erred in finding the Church was not liable for Sprinkel's acts because his misconduct was completely outside the course and scope of his employment with the Church. Second, he asserts the court erred in not imposing liability on the Church based on its employee, Dee Ide's failure to act on information given to her. Third, Appellant maintains the trial court erroneously found the Church could not be held liable for aiding and abetting Sprinkel's intentional torts under section 562.056.1 RSMo 2000.[13] And fourth, he contends the trial court erred in finding the Church was not liable for aiding and abetting Sprinkel's child sexual abuse and battery under section 537.046 RSMo Supp. 2005.[14] We address each argument in turn.
1. Appellant's Argument about the Course and Scope of Sprinkel's Employment
Appellant argues the trial court erred in finding the Church was not liable because Sprinkel's misconduct was completely outside the course and scope of his employment with the Church. We agree with the trial court's finding without further explanation because the Missouri Supreme Court has specifically declared, "intentional sexual misconduct ... [is] not within the scope of employment of a [church employee], and [is] in fact forbidden." Gibson , 952 S.W.2d at 246.
2. Appellant's Argument Relating to Dee Ide
Appellant also maintains the trial court erred in not imposing liability on the Shelbina Church based on its employee, Dee Ide's failure to act on information given to her. Appellant argues the Church should *661 be held liable for aiding and abetting Sprinkel's child sexual abuse and battery because Ide "had information concerning young boys being at Sprinkel's house, but she did nothing with that information."
Essentially, Appellant's true complaint is that Ide failed to act in a reasonable manner after hearing Sprinkel was inviting members of the Church youth to his house and if she had acted reasonably to report this information, Appellant would not have been molested. This argument does not describe an intentional act as alleged in Counts I and II but rather "is nothing more than a reconstituted claim of negligence, the lack of cognizability of which we have already addressed and need not repeat." See Ratigan , 481 S.W.3d at 54 ; see also Section II.B. above.
3. Appellant's Argument with Respect to Section 562.056.1
Appellant additionally contends the trial court erred in granting summary judgment on the grounds Appellant could not establish the Shelbina Church was liable for aiding and abetting under section 562.056.1. This is the criminal statute under which Appellant pled his claims for Counts I and II,[15] alleging the Church was liable for aiding and abetting under section 562.056.1 for the following reasons:
A. It failed to discharge the specific duty owed to [Appellant] to protect [Appellant] from harm while [Appellant] was a minor and in the custody and/or under the supervision of the Shelbina Church; and
B. The childhood sexual abuse committed by Sprinkel was committed while he was an agent of the Shelbina Church and acting within the course and scope of his employment/agency relationship and on behalf of the Shelbina Church, and his offense was at least a misdemeanor under Missouri law.
Based on the uncontroverted facts before the trial court, it found the Shelbina Church could not be held civilly liable under this section.
On appeal, Appellant maintains the court erred in citing and relying on section 562.056.1 in granting summary judgment. However, we find that by framing his Counts I and II based on this statute, Appellant invited the error of which he now complains. See Pierson v. Kirkpatrick , 357 S.W.3d 293, 299 (Mo. App. S.D. 2012). As a general rule, a party cannot invite error and then complain on appeal that the invited error was in fact made. Id. ; see also Cureau v. Cureau , 514 S.W.3d 685, 690 (Mo. App. E.D. 2017). "It is axiomatic that a [party] may not take advantage of self-invited error or error of his own making." Wilson v. P.B. Patel, M.C., P.C. , 517 S.W.3d 520, 525 (Mo. banc 2017) (quotations omitted). The trial court was entitled to rely on Appellant's cause of action as it was pled and to focus on the issues before it in accordance with the pleadings. Appellant cannot now complain the trial court erred in considering the statutory provision upon which he based his claims of aiding and abetting against the Church.
4. Appellant's Argument as to Section 537.046
Lastly, Appellant argues the trial court erred in finding the Shelbina Church was not liable for aiding and abetting under section 537.046, which authorizes a civil action for damages related to injury or illness caused by a defendant's conduct of "childhood sexual abuse." Section 537.046 ; see also Ratigan, 481 S.W.3d at 53. As defined by the statute, "childhood sexual abuse" is "any act committed by the *662 defendant against the plaintiff which act occurred when the plaintiff was under the age of eighteen years and which act would have been a violation of [Missouri statutes criminalizing, inter alia , rape, sodomy, or sexual abuse]." Section 537.046.1(1); see also, e.g. , section 566.030 RSMo 2000; section 566.060 RSMo 2000; section 566.100 RSMo 2000. Appellant claims the Shelbina Church is liable under this section because it aided and abetted Sprinkel's sexual abuse of Appellant, and "any civil action related to sexual abuse damages may be maintained pursuant to the language of [ section] 537.046." We disagree.
In Ratigan , the Western District was faced with a similar claim under section 537.046, in which a church parishioner alleged the Diocese was liable for aiding and abetting, or ratifying, a priest's violation of the statute. 481 S.W.3d at 38-40, 52-54. In rejecting the claim, the Court found no authority existed to support the assertion that "nonperpetrators" could be held liable for a perpetrator's childhood sexual abuse under section 537.046. Ratigan , 481 S.W.3d at 53. The Court reasoned:
A 'nonperpetrator' defendant could not cause injury or illness by 'childhood sexual abuse,' as that term is defined, because such a defendant has not committed one of the enumerated acts. While Missouri law does hold an aider and abettor criminally liable to the same extent as the principal offender, section 537.046 does not enumerate the statute criminalizing aiding and abetting, [ section 562.041 RSMo 2000 ], as one of the acts that constitutes 'childhood sexual abuse.' Accordingly, we conclude that the Missouri legislature did not intend to subject nonperpetrator defendants to liability under section 537.046.
Ratigan , 481 S.W.3d at 53-54 (emphasis and quotations in original). Because we agree with the Western District's reasoning, Appellant's argument that the Shelbina Church is liable on Counts I and II under section 537.046 fails as a matter of law. See Ratigan , 481 S.W.3d at 53-54 ; see also Bradley v. Ray , 904 S.W.2d 302, 315 (Mo. App. W.D. 1995) (finding no Missouri case recognizing a claim for aiding and abetting in the commission of an intentional tort).
5. Conclusion as to Point One
In sum, Appellant's arguments in support of his first point on appeal are without merit. Based on the foregoing, the trial court did not err in granting summary judgment as to Counts I and II. Point one is denied.
III. CONCLUSION
The trial court's grant of summary judgment in favor of Respondents is affirmed.
Gary M. Gaertner, Jr., P.J., Angela T. Quigless, J., concur.

The parties have extensively discussed the reference form completed by Shawn Burnley, as there is a factual dispute regarding a question Burnley testified he did not answer on the form. However, for this Court to delve into this issue, as it involves the reasonableness of the Conference's screening of Sprinkel, would run afoul of the Establishment Clause of the First Amendment to the United States Constitution. See Gibson v. Brewer , 952 S.W.2d 239, 247 (Mo. banc 1997) (adjudicating what a church "should know" requires inquiry into religious doctrine and violates the First Amendment). Thus, any of the disputed facts surrounding Burnley's reference form are not material to this appeal.

All further references to the Restatement (Second) of Torts are to the 1965 version.

Counts I, II, IV, V, VI, VII, and VIII were brought solely against the Shelbina Church. Count X was asserted only against the Conference. Counts III and IX were pursued against both Respondents. During the course of litigation, however, Appellant voluntarily dismissed Count IX and this claim is not at issue in this appeal.

Appellant's second and fourth points on appeal challenge the trial court's grant of summary judgment as to Counts III and V, respectively, asserting summary judgment was improper on grounds other than the First Amendment. However, because we conclude below that the trial court was correct in granting summary judgment as to Counts III and V on First Amendment grounds, and because we will affirm a grant of summary judgment on any legal theory supported by the record, we need not address Appellant's second and fourth points concerning these counts. See Owners Insurance Company v. Parkison , 517 S.W.3d 608, 612 (Mo. App. E.D. 2017) ; Doe v. Ratigan , 481 S.W.3d 36, 41 (Mo. App. W.D. 2015) ; see also Section II.B. below where we conclude the trial court was correct in granting summary judgment as to these counts on First Amendment grounds.

We need not discuss the religion clauses of the Missouri Constitution (Article I, sections 5-7) because the parties did not raise these provisions on appeal and the Missouri Supreme Court has found they "are not only more explicit but more restrictive" than the First Amendment. See Gibson , 952 S.W.2d at 246 (quotations omitted).

In explaining what types of claims involving neutral principles of law that could be brought against a religious organization, the Missouri Supreme Court cited the specific examples of a vicarious liability claim for negligent operation of a motor vehicle for an employee acting within the scope of employment or a claim for negligence against a church where a person slipped and fell on church premises. Gibson , 952 S.W.2d at 246.

See also Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C. , 565 U.S. 171, 190, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012) (distinguishing between controversies involving neutral principles of law such as governmental regulation of physical acts, including an individual's ingestion of peyote, and controversies concerning "government interference with an internal church decision that affects the faith and mission of the church itself").

Accordingly, the First Amendment did not compel the trial court to grant summary judgment in favor of the Shelbina Church as to Count VII (intentional failure to supervise Sprinkel). See id. However, we can affirm the grant of summary judgment on any legal theory supported by the record. See Owners , 517 S.W.3d at 612 ; Ratigan , 481 S.W.3d at 41. As further discussed in our analysis of Appellant's fifth point on appeal set forth in Section II.B.3. below, Appellant has failed to satisfy the elements of a claim for intentional failure to supervise clergy and the Church was entitled to summary judgment on Count VII as a matter of law.

This rule has been applied to preclude claims of negligent hiring/ordination/retention, negligent supervision of clergy, negligent supervision of children, negligent failure to warn, negligent infliction of emotional distress, and other independent claims of negligence against a church if they cannot be resolved based on neutral principles of law. See id.

Appellant's sixth point relied on actually contends the trial court erred in granting summary judgment as to Count X because the trial court misapplied the requirements of Restatement (Second) of Torts section 324(A) to the facts of this case. Although Appellant's point relied on relating to this claim does not raise the trial court's First Amendment finding, the argument portion of his brief does address the issue. Moreover, the Conference argued in its motion that it was entitled to summary judgment on these grounds and reiterates this argument on appeal. Because we can affirm the grant of summary judgment on any legal theory supported by the record, Owners , 517 S.W.3d at 612 ; Ratigan , 481 S.W.3d at 41, and because we find the trial court properly determined this claim was barred under the First Amendment, we will not discuss the remainder of Appellant's argument related to Count X.

But see Section II.B.3. in which we affirm the trial court's grant of summary judgment as to Count VII on other grounds.

This fact distinguishes the present case from the case relied on by Appellant, Hutchison v. Luddy , 560 Pa. 51, 742 A.2d 1052, 1055, 1060-62 (1999) (finding priest's status as a priest satisfied the "premises" requirement where evidence suggested the priest was privileged to enter a minor's hotel room for the purpose of providing religious counseling).

As relevant to Appellant's Counts I and II, section 562.056.1 RSMo 2000 states a corporation is guilty of an offense if:
(1) The conduct constituting the offense consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by law; or
(2) The conduct constituting the offense is engaged in by an agent of the corporation while acting within the scope of his employment and in behalf of the corporation, and the offense is a misdemeanor or an infraction, or the offense is one defined by a statute that clearly indicates a legislative intent to impose such criminal liability on a corporation ....
All further statutory references to section 562.056 are to RSMo 2000, which was the version of the statute in effect at the time the events giving rise to Appellant's claims occurred.

All further statutory references to section 537.046 are to RSMo Supp. 2005, which incorporates legislative amendments through 2004, is the latest version of the statute, and was the version of the statute in effect at the time the events giving rise to Appellant's claims occurred.

The relevant allegations relating to section 562.056.1 are identical for Counts I and II.